# Richmond

SAMUEL L. SLOVER, ET ALS. V. JAMES O. WINSTON, ET ALS.

January 15, 1931.

Present, Campbell, Holt, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*Williams, Loyall & Tunstall,* for the appellants.

*Williams & Mullen,* for the appellees.

GREGORY, J., delivered the opinion of the court.

The Times-Dispatch Publishing Company, Incorporated, borrowed from the Prudential Insurance Company of America $250,000.00, and executed a deed of trust on the 27th day of March, 1923, to Wilbur S. Johnson and E. D. Schumacher, trustees, whereby its building and the land on which it was situated was conveyed to the trustees in order to secure the payment of the amount borrowed. This debt was evidenced by one certain negotiable note for $250,000.00, made by the Times-Dispatch Publishing Com-

pany, Incorporated, J. O. Winston and T. S. Winston, and payable to the Prudential Insurance Company of America, in annual installments of $10,000.00 each, beginning on the 27th day of March, 1925, and continuing until the 27th day of March, 1933, at which last date the balance becomes due and payable. It was provided that the interest should be paid semi-annually. This deed of trust was, and is, the first lien on the property.

The total number of shares of outstanding stock in the Times-Dispatch Publishing Company, Incorporated, was 10,420 and James O. Winston and T. S. Winston owned 6,610 shares. The other shares were owned as follows: C. P. Hasbrook, 170 shares; Sunset B. Hasbrook, 86 shares; Jules Breuchaud, 3,304 shares and Frederick B. Rogers, 250 shares.

C. P. Hasbrook was the general manager of the business of the Times-Dispatch Publishing Company, Incorporated, Sunset B. Hasbrook was his wife and Jules Breuchaud his father-in-law.

J. O. Winston and T. S. Winston, who had the controlling interest in this corporation, decided to sell their shares of stock, and on August 3, 1923, they granted to C. P. Hasbrook, in consideration of $10,000.00 cash, an option to purchase their stock. The option is as follows:

"Agreement, made and entered into by and between Jas. O. Winston and T. S. Winston, of Richmond, Virginia, and C. P. Hasbrook, of Richmond, Virginia:

"Witnesseth: That for and in consideration of the sum of ten thousand dollars ($10,000), the receipt whereof is hereby acknowledged, the said Winstons do hereby grant and sell to the said Hasbrook the right and option to purchase from the said Winstons sixty-six hundred and ten (6,610) shares of the capital stock of the Times-Dispatch Publishing Company, Incorporated, a corporation under the laws of the State of Virginia, at and for the price of

three hundred and sixty thousand dollars ($360,000), payable two hundred and fifty thousand dollars ($250,-000) in a second mortgage maturing in ten years, bearing interest at the rate of six per cent, payable semi-annually, on the present building of the company, and the residue one-fourth cash, on which is to be credited the ten thousand dollars ($10,000) paid for this option, in the event this option is accepted, and the residue in three equal payments, six (6), nine (9) and twelve (12) months after date, said payments to be secured to the satisfaction of the said Winstons; and upon the further consideration that the said Winstons will, upon the closing of said option, be released from all contingent liability with respect to the obligations of the Times-Dispatch Publishing Company, Incorporated, except the first mortgage bonds now on the building; and upon the further consideration that the purchaser will require any new company organized for the purpose of acquiring the newspaper and publishing business of the company to covenant to pay the installments upon the first mortgage now on the building as the same mature.

"The said Hasbrook shall have the right to exercise this option at any time on or before 12 o'clock M. eastern standard time, on the 11th day of August, 1923, by written notice delivered at the office of T. S. Winston, in the city of Richmond, Virginia.

"Upon notice of the acceptance of said option, the said Winstons shall, within three days, deposit with the American Trust Company, of Richmond, Virginia, sixty-six hundred and ten (6,610) shares of the capital stock of the Times-Dispatch Publishing Company, Incorporated, duly indorsed in blank, and the said Hasbrook shall deposit with the said trust company, within said three days, the one-fourth cash payment above provided for.

"Thereafter all steps necessary to consummate said transaction shall be promptly taken, and upon the delivery to

the American trust company of the ten-year second mortgage bonds to the amount above mentioned and obligations evidencing the three deferred payments above mentioned, secured to the satisfaction of the said Winstons, the said trust company shall deliver said stock to the said Hasbrook.

"Said transaction, when consummated, shall be so handled that said second mortgage shall constitute a legal lien on said building for the security of said second mortgage bonds to the amount of two hundred and fifty thousand dollars ($250,000).

"It is understood that the said Hasbrook, in the event he elects to exercise said option, shall have the right to organize a new company or companies to take over the building and/or other business of the company prior to placing said second mortgage upon said building, so long as said mortgage shall constitute a legal lien for the security of the bonds to be received by the said Winstons, subject only to the first mortgage now on the building.

"In the event this option is not exercised on or before the hour and date above mentioned, same shall become void and the consideration paid for said option, to-wit, ten thousand dollars ($10,000), shall remain the property of the said Winstons, and no other or further liability shall rest on any of the parties hereto.

"In testimony whereof, the said T. S. Winston has hereunto signed his name and the name of the said Jas. O. Winston, by himself as agent, and the said C. P. Hasbrook has likewise hereunto set his hand and seal this         day of         , 1923.

"(Signed)   T. S. WINSTON,   (Seal)
"(Signed)   J. O. WINSTON,   (Seal)
"(Signed)   By T. S. WINSTON, Agent   (Seal)
"(Signed)   C. P. HASBROOK   (Seal)"

The foregoing option agreement was assigned to S. L. Slover on August 4, 1923.

In order to eliminate any difficulty in securing the consent and cooperation of the three other stockholders, namely: Jules Breuchaud, Sunset B. Hasbrook and Frederick B. Rogers, in connection with consummating the sale of the stock, in accordance with the option agreement, they entered into and signed the following agreement:

"Know all men by these presents, that whereas Jas. O. Winston and T. S. Winston, by agreement of even date herewith, have agreed to sell to S. L. Slover, of the city of Norfolk, in the State of Virginia, their entire interest, being sixty-six hundred and ten (6,610) shares of stock, in the Times-Dispatch Publishing Company, Incorporated, for certain considerations in said agreement fully set out, a copy of the said agreement being hereto attached and made a part hereof, and

"Whereas, by the terms of said agreement, C. P. Hasbrook, of Richmond, Virginia, undertakes, on behalf of himself and all stockholders in the said Times-Dispatch Publishing Company, Incorporated, other than the said Jas. O. Winston and T. S. Winston, to assign and transfer to the said stockholders of the Times-Dispatch Publishing Company, Incorporated, other than the said Winstons, have or might have in and to an issue of two hundred and fifty thousand dollars ($250,000) face value of bonds to be made by a new corporation, and to be secured by a second mortgage on the Times-Dispatch building, and further agrees to unite in any corporate action on the part of the Times-Dispatch Publishing Company, Incorporated, and/or the said new corporation, for the purpose of effectuating the terms of said agreement and procuring the delivery of the said bonds to the said Winstons as therein provided:

"Now, therefore, in consideration of the premises and the benefits which the undersigned believe will accrue to

them by reason of the acquisition by the said Slover of the stock of the said Winstons, and in further consideration of the sum of one dollar ($1) to each of the undersigned by the said C. P. Hasbrook in hand paid, the receipt whereof is hereby acknowledged, the undersigned, owning the number of shares of stock of the Times-Dispatch Publishing Company, Incorporated, set after their respective names (the same being all of the stock of the said Times-Dispatch Publishing Company, Incorporated, other than the stock held by the said Winstons and the said C. P. Hasbrook) do hereby irrevocably authorize and empower the said C. P. Hasbrook, for them and on their behalf, to enter into, execute and carry out said agreement, hereto attached; and the undersigned do hereby further irrevocably constitute and appoint the said C. P. Hasbrook their true and lawful attorney for them and in their names to waive notice of any corporate meeting or meetings before which the matters and things referred to in the attached agreement may come, and to vote in their names, upon all such matters and things, and generally, for them and in their names, to do anything which they might do if they were personally present, hereby ratifying and confirming all that their said attorney may do in the premises; and the undersigned further agree, if requested, to execute other proxies or powers of attorney, in the usual form, for the further carrying out of the purposes of this power of attorney.

"Given under our hands and seals this 9th day of August, 1923.

"Name.      No. of Shares

"(Signed)   JULES BREUCHAUD   (Seal)

"F. B. ROGERS   (Seal)

"SUNSET B. HASBROOK   (Seal)"

On August 11, 1923, the sale of the stock of J. O. Winston and T. S. Winston to S. L. Slover, the assignee of the option, was consummated by the following agreement:

"This agreement, made and entered into in triplicate, this 11th day of August, 1923, between Jas. O. Winston and T. S. Winston, both of the city of Richmond, Virginia, parties of the first part; S. L. Slover, of the city of Norfolk, Virginia, party of the second part; and C. P. Hasbrook, of the city of Richmond, Virginia, acting as hereinafter set forth on behalf of himself and other stockholders of the Times-Dispatch Publishing Company, Incorporated, party of the third part;

"Witnesseth that whereas, by agreement dated the 3rd day of August, 1923, to which reference is hereby made, the parties of the first part granted to the party of the third part the right and option to purchase from the parties of the first part sixty-six hundred and ten (6,610) shares of the capital stock of the Times-Dispatch Publishing Company, Incorporated, upon certain terms in the said agreement more fully set out, and

"Whereas, the party of the third part did, on the 4th day of August, 1923, for valuable consideration assign the said option to the party of the second part, and the party of the second part is willing to accept the said assignment and to purchase the said stock, upon the terms and conditions hereinafter set forth, and

"Whereas, under the terms of this agreement, the party of the second part agrees to cause to be delivered to the parties of the first part two hundred and fifty thousand dollars ($250,000) par value of bonds, maturing in ten years, and bearing interest at the rate of six per cent (6%) per annum, secured by a second mortgage upon the building now owned by the Times-Dispatch Publishing Company, Incorporated, and in order for the party of the second part to carry out said agreement it is necessary for him to secure the unanimous assent and concurrence of the stockholders of the Times-Dispatch Publishing Company, Incorporated, other than the parties of the first part, and

"Whereas, the stockholders of the Times-Dispatch Publishing Company, Incorporated, other than the parties of the first part, believe it to be to their interest that the party of the second part should acquire the stock of the parties of the first part, and in consideration of the transfer of said stock to the party of the second part by the parties of the first part, are willing to assign, transfer and surrender to the parties of the first part any interest which they (the said stockholders other than the parties of the first part) have or might have in the two hundred and fifty thousand dollars ($250,000) of second mortgage bonds hereinabove referred to, and to that end the said stockholders have authorized the party of the third part, on their behalf to enter into this agreement; and the party of the third part is willing to enter into the same on his own behalf;

"Now, therefore, in consideration of the premises, and for the other considerations hereinafter set forth, the parties hereto have agreed as follows:

"First: The parties of the first part do hereby assign, transfer and set over to the party of the second part sixty-six hundred and ten (6,610) shares of the capital stock of the Times-Dispatch Publishing Company, Incorporated, a corporation organized and existing under the laws of the State of Virginia, at and for the price of three hundred and sixty thousand dollars ($360,000), payable as follows:

"A. The party of the second part, as promptly as possible after the transfer to his name and the deposit with the American Trust Company, in the city of Richmond, Virginia, by the parties of the first part, as hereinafter set forth, of the above mentioned sixty-six hundred and ten (6,610) shares of the capital stock of the Times-Dispatch Publishing Company, Incorporated, is to cause the said Times-Dispatch Publishing Company, Incorporated, in pursuance of proper corporate action, to transfer

and convey to a corporation to be formed under the laws of the State of Virginia the building known as the Times-Dispatch building, now owned by the Times-Dispatch Publishing Company, Incorporated, in consideration of the assumption by the said new corporation of the first mortgage securing an issue of two hundred and fifty thousand dollars ($250,000) par value of bonds which now exists upon the said building, for the payment, however, of which bonds, principal and interest, the Times-Dispatch Publishing Company, Incorporated, is to be and remain liable; and for the further consideration of the total amount of an issue of two hundred and fifty thousand dollars ($250,000) face value of other bonds, payable ten years after date hereof, and bearing interest at the rate of six per cent (6%) per annum, payable semi-annually, made by the said new corporation and secured by a second mortgage or deed of trust upon the said building so to be conveyed to the said new corporation, which said second mortgage shall constitute a legal lien for the security of the said bonds so to be issued, subject only to the first mortgage aforesaid; said bonds to be subject to the right to the company to anticipate payment at any interest period, upon thirty days' notice, by payment at par and interest; and the said party of the second part further agrees that the Times-Dispatch Publishing Company, Incorporated, will, by proper corporate action, cause said issue of two hundred and fifty thousand dollars ($250,000) of second mortgage bonds aforesaid to be transferred to the parties of the first part and held by them as and for their absolute property in part payment of the purchase price aforesaid, but the party of the second part may, at his option, pay any portion of the said two hundred and fifty thousand dollars ($250,000) in cash, and to the extent that said payments shall be made in cash his obligation to deliver second mortgage bonds as aforesaid shall be reduced.

"B. Of the remaining part of said purchase price, amounting to one hundred and ten thousand dollars ($110,000), twenty-seven thousand five hundred dollars ($27,500) is to be paid in cash (but subject to the credit of whatever amount shall have theretofore been paid in cash to the parties of the first part by the party of the third part in consideration of the option hereinabove recited), upon the transfer of the said stock to the name of the party of the second part and its delivery to the American Trust Company, of Richmond, Virginia, as hereinabove provided, and the remaining amount of eighty-two thousand five hundred dollars ($82,500) is to be paid in three equal installments of twenty-seven thousand five hundred dollars ($27,500) each, payable respectively six (6), nine (9) and twelve (12) months after date of these presents, and evidenced by promissory notes, for the payment of which the stock purchased by the party of the second part shall be held as collateral security, as hereinafter set forth. Until said payments shall have been made in full, and pending the compliance by the party of the second part with all and singular the other terms of this agreement, said sixty-six hundred and ten (6,610) shares of stock, sold as aforesaid by the parties of the first part to the party of the second part, and transferred to the name of the party of the second part, shall be delivered to the American Trust Company, of Richmond, Virginia, with proper assignments by the party of the second part attached thereto, and shall be held by it for the further security of the parties of the first part in respect of the carrying out of this agreement by the party of the second part.

"Second: The parties of the first part covenant that the indebtedness of the Times-Dispatch Publishing Company, Incorporated, secured and unsecured, direct and contingent, does not exceed the total sum of seven hundred fourteen thousand nine hundred thirty dollars and twenty-two

cents ($714,930.22), including the first mortgage on the real estate of said company, as set forth in a schedule of the said indebtedness hereto attached and made a part hereof, marked 'exhibit A'; and as a further consideration for the sale of said stock by the parties of the first part to the party of the second part, the party of the second part agrees that he will, within a reasonable time after the execution of this agreement, cause the parties of the first part to be released from all contingent liability in respect of the obligations of the Times-Dispatch Publishing Company, Incorporated, except the first mortgage bonds now secured on the Times-Dispatch building.

"Third: In the event that the party of the second part shall cause the newspaper and publishing business of the Times-Dispatch Publishing Company, Incorporated, to be transferred to any new company, the party of the second part covenants that he will procure a covenant on the part of said company to pay the instalments which may become due upon the first mortgage now on the Times-Dispatch building, as the same may severally mature.

"Fourth: The party of the third part, on behalf of himself and all other stockholders of the Times-Dispatch Publishing Company, Incorporated, other than the parties of the first part (said party of the third part having thereunto been duly authorized by the said stockholders) does hereby, for the consideration hereinabove recited, assign, transfer and set over to the parties of the first part all and singular the rights of himself and said other stockholders in and to the second mortgage bonds of the new corporation herein agreed to be formed, and further agrees to join and concur with the party of the second part in such corporate action on the part of the Times-Dispatch Publishing Company, Incorporated, and/or the said new corporation, as may, in the judgment of the party of the second part, be necessary in order to fully carry out the terms of this agreement.

"Fifth: The party of the second part agrees, upon the execution of this agreement, to proceed with all reasonable speed in the taking and procuring of the several actions contemplated by this agreement and to carry out and complete all and singular the things agreed by him to be done or to be procured to be done, with the exception of the deferred payments mentioned in clause 'B' of paragraph 'First' hereof, not later than sixty days from the date hereof.

"In witness whereof, the parties hereto have hereunto set their signatures and seals the day and year first above written.

"(Signed)     J. O. WINSTON     (Seal)
"(Signed) By T. S. WINSTON
"(Signed)     T. S. WINSTON     (Seal)
"(Signed)     S. L. SLOVER     (Seal)
"(Signed)     C. P. HASBROOK (Seal)

"(Signed)   J. O. WINSTON."

It will be observed that all of the stockholders of the Times-Dispatch Publishing Company, Incorporated, were parties to the agreement of August 11, 1923, C. P. Hasbrook representing, under the power of attorney of August 9, 1923, above set out, the interests of Breuchaud, Rogers, and Sunset B. Hasbrook, in addition to his own.

In accordance with the final agreement of August 11, 1923, there was organized the Times-Dispatch Realty Corporation, the organization shares of this corporation being held by employees of the Times-Dispatch Publishing Company, Incorporated. After the necessary arrangements had been made, the Times-Dispatch Publishing Company, Incorporated, transferred the title to the real estate to the Times-Dispatch Realty Corporation, by a proper deed, in consideration of the assumption by the Times-Dispatch Realty Corporation of the indebtedness due the Prudential Insurance Company of America of $250,000.00 "and the

further consideration of the delivery to the party of the first part by the party of the second part of the total amount of an issue of $250,000.00 face value of bonds, dated October 1, 1923, and payable ten years after date, the said bonds to be made by the party of the second part, and to bear interest at six per cent per annum, payable semi-annually and to be secured by a second mortgage or deed of trust upon the property hereinafter conveyed."

In order to effectuate the intention of the parties, the Times-Dispatch Realty Corporation issued the bonds amounting to $250,000.00 and secured them by a second deed of trust upon the real estate. This second deed of trust was made on October 1, 1923, and the American Trust Company was named as trustee. The bonds were issued to the Times-Dispatch Publishing Company, Incorporated, and were by it, under the agreement, transferred to J. O. Winston and T. S. Winston, who now hold them jointly. There are 500 bonds in the sum of $500.00 each, due on August 11, 1933, and the interest of six per cent is payable the 11th of February and August of each year. No part of the principal of this debt has been paid and there has been default in the interest payments since the interest installment, which was paid on February 11, 1925.

The annual installments and interest due the Prudential Insurance Company of America have been promptly paid by the Times-Dispatch Publishing Company, Incorporated, and to the extent that the debt secured in the first deed of trust has been reduced, it claims to be subrogated to the rights of the Prudential Insurance Company of America.

In November, 1926, J. O. Winston, T. S. Winston and the American Trust Company filed their bill in this cause, naming as defendants, S. L. Slover, C. P. Hasbrook, Sunset B. Hasbrook, Jules Breuchaud, Frederick B. Rogers, Times-Dispatch Publishing Company, Incorporated, and Times-Dispatch Realty Corporation.

The American Trust Company, it was alleged, joined in the suit for the purpose of protecting the rights of the bond holders under the second deed of trust. It did not declare, but expressly reserved the right at any time to declare, due the total principal sum in accordance with the terms of the deed of trust.

The material allegations of the bill embraced the facts above set forth, and the three instruments herein set out were filed as exhibits. It was alleged that the debt secured under the first deed of trust should be paid off by the Times-Dispatch Publishing Company, Incorporated, out of its own fund, in order that the debt secured under the second deed of trust might be paid from the rents, profits and capital value of the real estate and the other assets of the Times-Dispatch Realty Corporation, and in event of the Times-Dispatch Realty Corporation failing to pay the bonds secured under the second deed of trust, then the individual defendants were obligated to pay them. It was further alleged that the Times-Dispatch Publishing Company, Incorporated, had committed waste in leaving the building vacant and permitting it to become insanitary, etc.; that it by reason of its control of the Times-Dispatch Realty Corporation has converted large sums of money, which were assets of the realty corporation, and they have been applied by the Times-Dispatch Publishing Company, Incorporated, to the payment on the Prudential Insurance Company of America debt when the Times-Dispatch Publishing Company, Incorporated, was obligated to pay this debt out of its own funds; that the affairs of the Times-Dispatch Publishing Company, Incorporated, and the Times-Dispatch Realty Corporation have been so mingled that it is impossible to separate one from the other, and therefore the corporate entity should be ignored and the Times-Dispatch Publishing Company, Incorporated, held liable, not only for the payment of the Prudential Insurance

Company of America debt, but also for the debts of the Times-Dispatch Realty Corporation.

In addition to asking for an accounting and a receiver, the complainants asked that the Times-Dispatch Publishing Company, Incorporated, be required to pay the Prudential Insurance Company of America debt and that the receiver apply the rents and profits of the real estate to the payment of principal and interest on the debt secured under the second deed of trust, and that the Times-Dispatch Publishing Company, Incorporated, be required to account to the Times-Dispatch Realty Corporation for rents, repairs, waste and damages to the building by reason of its abandonment of it.

The complainants do not ask for a sale of the real estate under the second deed of trust.

Answers were filed by all of the defendants denying the material allegations of the bill and all of them except the Times-Dispatch Realty Corporation filed cross bills claiming that the Times-Dispatch Publishing Company, Incorporated, is subrogated to the extent of the payments made by it to the Prudential Insurance Company of America, to the lien of the first deed of trust, subordinate only to the balance due on the Prudential Insurance Company of America debt. An answer was filed to the cross bills among other things denying the right of subrogation claimed.

The cause was submitted to the trial court on depositions and the exhibits, and briefly the court held: (1) That under the contract of August 11, 1923, the Times-Dispatch Publishing Company, Incorporated, was primarily liable for the debt secured under the first deed of trust. (2) That it was not necessary to rule on the motion of the defendants (appellants) to exclude certain evidence. (3) Overruled the contention of appellees that the corporate entity of the Times-Dispatch Realty Corporation should be disregarded. (4) Overruled appellees' contention that waste had been

committed. (5) Denied appellants' contention of subrogation. (6) Denied the receivership. (7) And that it was not called upon to grant any affirmative relief.

The court filed with the decree an opinion, and it, with the decree, was considered an adjudication of the principles of the cause.

There are five assignments of error made by the appellants to this decree, and briefly they are: (1) The court erred in construing the contract of August 11, 1923, as requiring the Times-Dispatch Publishing Company, Incorporated, to pay the debt due the Prudential Insurance Company of America, except in its relation as surety. (2) In failing to treat the Times-Dispatch Publishing Company, Incorporated, as between it and the Times-Dispatch Realty Corporation, as surety. (3) In failing to hold that the Times-Dispatch Publishing Company, Incorporated, was subrogated to the lien of the first deed of trust to the extent of the installments and interest it has paid on the Prudential Insurance Company of America debt, subordinate only to the balance of that debt. (4) In failing to strike out of the record certain objectionable evidence because it was incompetent, irrelevant and immaterial. (5) In entering the decree of June 25, 1929.

The contention of the appellees is: (1) That they are entitled to have the Times-Dispatch Publishing Company, Incorporated, pay the debt due the Prudential Insurance Company of America, because it was agreed in the contract that it would remain primarily liable for the payment of the debt. (2) That the evidence objected to was admissible for the purpose of showing the situation of the parties and the circumstances under which the contract was made. (3) That the Times Dispatch Publishing Company, Incorporated, is not entitled to subrogation. (4) That if necessary to do justice between the parties the corporate entity of the Times-Dispatch Realty Corporation may be disregarded.

■ Assignment number four deals with the failure of the court to rule on appellants' motion to strike out certain evidence. The contract of August 11, 1923, refers to the two preliminary instruments; the option and the power of attorney given C. P. Hasbrook by the remainder of the stockholders. These two papers may therefore be read with the contract of August 11, 1923, in construing it. From our view of the case it seems unnecessary to go beyond the contract in order to construe it, and therefore for the purpose of deciding the case the motion to strike out the evidence may be sustained. In other words, we hold that the meaning and intent of the parties can be gathered from the language used in the contract of August 11, 1923; that it is plain and unambiguous and that it was not necessary to show the situation of the parties and the circumstances under which it was made, and with this exception we adopt the able opinion of the late trial judge of the Law and Equity Court of the city of Richmond, Honorable B. T. Crump, which is as follows:

"Upon consideration of the record in this case and the exhaustive argument of counsel, both oral and written, my conclusions, succinctly stated, are:

■ ■ "1. The primary and basic question presented in the case arises upon the construction of the final contract of sale of the stock executed August 11, 1923. Was it the intention of the parties in making that contract that the Times-Dispatch Publishing Company, the principal obligor in the first mortgage bonds, should remain primarily bound for their payment out of its own funds as between it and the Winstons, holders of the second mortgage bonds, and so to exonerate the second mortgage bonds from inferiority to the first mortgage bonds as between these parties, and insure their payment by reason of the lien on the real estate? The contract for the sale of the stock is between individuals, and the then existing corporation is not a

party as a legal entity. However, the entire body of stockholders of the corporation, including necessarily its officers, owners and those in control of it, are parties and they stipulate that certain corporate action of this corporation and of other contemplated corporations under the same control shall be had; so that in effect in the equity forum the corporate entities should be taken to be bound by the contract. In mentioning the assumption of the first mortgage by the proposed realty company, as part consideration for the conveyance to it of the real estate and building, the contract provides in item A of the first clause, 'for the payment, however, of which bonds, principal and interest, the Times-Dispatch Publishing Company, Incorporated, is to be and remain liable,' and, further in the same item, it is provided that Mr. Slover, instead of delivering all of the second mortgage bonds, 'may, at his option, pay any portion of the said two hundred and fifty thousand dollars ($250,000.00) in cash, and to the extent that said payments shall be made in cash his obligation to deliver second mortgage bonds, as aforesaid, shall be reduced.'

"In clause second it is stipulated that the indebtedness of the Times-Dispatch Publishing Company does not exceed 'the total sum of $714,930.22, including the first mortgage on the real estate of said company,' indicating that the first mortgage bonds were considered as an existing and continuing liability of the company, in arriving at the net balance of assets for the purpose of estimating the sales values of the stock. In the second clause it is agreed, also, that the Winstons shall be relieved of all contingent liabilities except the first mortgage bonds. Their release from these bonds could not be accomplished without the consent of the Prudential Company. The contingency of liability, however, could only arise in the event the publishing company, as primary obligor, failed in their obligation to pay the bonds.

"In clause third Mr. Slover covenants that if the newspaper and publishing business is transferred to a new company, as well as transferring the building to the new company, as agreed upon, 'he will procure a covenant on the part of said company to pay the installments which may become due upon the first mortgage now on the Times-Dispatch building, as the same may severally mature.'

"The rights of the Prudential Company as holder of the first mortgage bonds could not be affected by the provisions of this contract.

"The stock transfer contract of August 11th refers to an option granted to Mr. Hasbrook on August 3rd, and also to the paper executed by the remaining stockholders authorizing Mr. Hasbrook to act for them. These two papers may be considered as part of the main instrument in endeavoring to ascertain the meaning of that contract in respect to the principal matter in contest. Nothing that tends to vary, contradict, or add to its plain terms can be considered. While prior negotiations as to the terms of the contract are merged in the executed instrument, and are generally not admissible in evidence, yet, in considering a question of the character at issue here, the court may, and should, admit oral and documentary testimony showing the situation of the parties and the circumstances under which the contract was made. Upon the whole case, as submitted, I am constrained to the conclusion that the consideration for the stock was the ultimate actual payment of the $360,000.00; that the Times-Dispatch Publishing Company was not released of its obligation to pay off the bonds held by the Prudential and that it could not free itself of this obligation, as to the plaintiffs, by transferring its newspaper property to another corporation; that the placing of the lien to secure the new bonds through the realty corporation was intended as a matter of convenient

operation of the newspaper business by the new owners and not in any way to release the publishing company from its obligation to pay off the first mortgage bonds executed by it and for its corporate purposes, although the realty company assumed the bonds as part of the consideration for the transfer of the real estate to it in order to carry out the contract between the parties. The initial question above stated by me must be answered in the affirmative.

"2. I do not consider it necessary to pass in detail upon the admissibility of certain portions of the evidence, oral and documentary, to which objections are noted by the defendants.

"3. It was within the contemplation of the contract that the new owners and other stockholders should organize such a corporation as the realty company, and the contract stipulates that they should cause this corporation to take certain corporate action. It was necessarily implied that this corporation should be under the control of and be conducted by Mr. Slover and his associates. Therefore, the complainants here, who were parties to the contract, are not in a position to raise any contention as to the separate corporate entity of the realty corporation, nor to complain of the fact that it was under the control of the same officers as those conducting the affairs of the Times-Dispatch Publishing Company, and that it should be regarded as a subsidiary to the corporation. The argument, therefore, that in the court of equity the corporate organization of the realty corporation should be disregarded, and all the affairs of both corporations be taken as under the management of the officers of the Times-Dispatch Publishing Company and constituting a single business, is, under the circumstances here, without force.

"4. I do not consider the evidence in the case sufficient to sustain the charge, against the Times-Dispatch

Publishing Company and its officers, of committing waste by lessening the value and availability of the real estate upon which the second mortgage bonds held by the complainants are secured.

"5. There is no ground upon which to base a holding that the Times-Dispatch Publishing Company is entitled to be subrogated, for its contributions towards the payment of the first mortgage bonds, to the lien of those bonds upon the real estate, as against the bonds held by the complainants. On the contrary, as stated above, the publishing company is under an obligation to pay off those bonds. It seems to have complied with this obligation so far by causing the mortgage payments to be made, as they became due.

"6. The complainants in their bill pray for the appointment of a receiver of the building and realty involved. The American Trust Company, trustee in the deed securing the bonds held by the complainants, is not a party to this suit. The prayer for a receiver is based upon the allegation that the Times-Dispatch Publishing Company and its officers are unfairly exercising their dominating control over the realty corporation and the real estate to which it holds title, and that the corporate existence of the realty corporation should be disregarded. As the controversy between the parties stands, no case appears for the appointment of a receiver on these grounds. The complainants sue in virtue of their ownership of the bonds. The deed of trust securing these bonds provides methods for its enforcement. Article IX, section 1, of the mortgage stipulates that until the trustee (1) takes possession, or (2) sells the property, or (3) institutes proper proceedings to appoint a receiver 'the company * * * may retain and enjoy full and free use, possession and management of the same and the full enjoyment of the income, revenue and profits derivable therefrom, subject to the limitations herein con-

tained.' Article V of the mortgage provides for the remedies to be pursued in case of default in payment of interest or principal. There seems to be no Article VI in the mortgage. In the sixth clause of section 1 in Article VII the mortgage provides that no bondholder shall have the right to institute any suit, action, or legal proceeding for the appointment of a receiver. The entire instrument contemplates only judicial proceedings initiated by the trustee as permissible for the enforcement of the mortgage, or in the event of violation of any of the collateral covenants. Although default has been made in payment of interest on the bonds, it is plain that the terms of the mortgage do not authorize the appointment of a receiver in this proceeding.

"The court will enter an order filing this memorandum of its conclusions, as a decree adjudicating the principles of the cause. The court reserves the character of the final decree for subsequent determination. It seems to the court that it is not called upon to afford affirmative relief to either party. The individual defendants, who were parties to the contract, agreed to cause the payments on the first bonds to be made as they matured, and it is not shown that there has been a breach of this obligation. It plainly appears from the record, and was within the contemplation of the contract, that the owners of the Times-Dispatch Publishing Company would become and remain the owners of the proposed realty corporation, and so, in effect, of the real estate itself, and, therefore, the payment of the first mortgage bonds would accrue to their benefit, because the extinction of the first mortgage bonds, and the release of the lien for their payment, would enhance the value of the property and its availability for disposal."

The decree complained of is affirmed.

*Affirmed.*