Grafton
No. 84-438

IN THE MATTER OF HITCHCOCK CLINIC, INC.

August 5, 1985

*Orr & Reno P.A.*, of Concord (*Howard M. Moffett & a.* on the brief, and *Mr. Moffett* orally), for Hitchcock Clinic, Inc.

*Hershenson, Carter & Scott*, of Norwich, Vermont (*John J. Long, Jr.*, and *Peter H. Carter* on the brief, and *Mr. Long* orally), for R. Jackson Forcier.

*Daschbach & Kelly P.A.*, of Lebanon (*Joseph F. Daschbach* on the brief and orally), for Trustees of Dartmouth College.

*Devine, Millimet, Stahl & Branch P.A.*, of Manchester (*David H. Barnes* and *Christiana R. Geffen* on the brief, and *Mr. Barnes* orally), for Mary Hitchcock Memorial Hospital.

BROCK, J.  Hitchcock Clinic, Inc. (Clinic) is a corporation organized in 1946 as a group medical practice. It operates, as it has throughout its history, in close cooperation with Dartmouth Medical

School (Dartmouth) and Mary Hitchcock Memorial Hospital (Hospital). The physicians employed by the Clinic also constitute the clinical faculty of Dartmouth and the clinical staff of the Hospital. The three entities together are referred to as the Dartmouth-Hitchcock Medical Center (Center).

The Clinic's directors have decided that it would be economically advantageous to dissolve the Clinic as a corporation and to reorganize it as a not-for-profit organization. To this end, they have assisted in the formation of a new voluntary corporation (the New Clinic). *See* RSA chapter 292. They propose to dissolve the Clinic by a vote of its stockholders, and then to transfer all its assets to the New Clinic, which would assume all of the Clinic's functions virtually without change.

The defendant Forcier (defendant) is one of the Clinic's stockholders, who are all physicians employed by the Clinic. He objected to the form of the proposed reorganization, noting that both RSA 293-A:88, II (Supp. 1983) and a 1960 amendment to the Clinic's Articles of Agreement provide that, on dissolution, its net assets must be distributed to its stockholders.

The Clinic then filed a petition for a declaratory judgment pursuant to RSA 491:22. It asked the superior court to rule that, due to the Clinic's relationship to the Center, and its express and implied agreements with the Hospital and Dartmouth, it would be obliged, on dissolution, to distribute its assets to the New Clinic rather than to the stockholders. The Superior Court (*Murphy*, J.) ruled in the Clinic's favor, and the defendant appealed. We reverse.

The defendant first argues that in the current posture of this case a declaratory judgment is not appropriate. The record indicates that the Clinic's directors have not yet submitted a formal proposal of dissolution to the stockholders. The defendant argues that there can be no proper basis for a declaratory judgment until such a proposal is made.

We disagree. Representatives of the Clinic initialed an agreement with the Hospital and Dartmouth in 1981, stating their intention to restructure the legal relationships of the parties along nonprofit lines. Indeed, it appears that the defendant does not wish to prevent such a change, nor even to prevent the eventual transfer of the Clinic's assets to the New Clinic. He evidently believes that he will be able to claim a large charitable tax deduction if his share of the Clinic's assets is distributed to the New Clinic through him, instead of being transferred directly.

The trial court could have found, on this record, that the Clinic had committed itself to a change in its corporate structure,

but that the form the change would take depended on resolution of the issues presented in this case. Thus, this is not an action "based on a hypothetical set of facts," *Salem Coalition for Caution v. Town of Salem*, 121 N.H. 694, 696, 433 A.2d 1297, 1299 (1981), but one intended to afford "relief from uncertainty and insecurity created by a doubt as to rights, status, or legal relations existing between the parties." *Portsmouth Hospital v. Indemnity Ins. Co.*, 109 N.H. 53, 56, 242 A.2d 398, 400 (1968). It is accordingly an appropriate case for declaratory relief. *See id.*

RSA 293-A:88, II (Supp. 1983) provides in pertinent part that, after a corporation has filed with the Secretary of State a statement of intent to dissolve,

> "[t]he corporation shall proceed to collect its assets, . . . and, after paying or adequately providing for the payment of all its obligations, distribute the remainder of its assets, either in cash or in kind, among its shareholders according to their respective rights and interests."

The Clinic's Articles of Agreement, as amended in 1960, provide that "[u]pon dissolution of the corporation, the net assets shall be distributed to the stockholders" in proportion to their length of service as members of the Clinic.

In ruling that these provisions could not prevent the transfer of the Clinic's assets directly to the New Clinic, the trial court laid great stress upon the agreements entered into by the Clinic with the Hospital and Dartmouth. Those agreements, in essence, committed the Clinic to use its assets to further the Center's goals of providing high-quality patient care and educating undergraduate and graduate medical students. The Clinic not only pledged that its members would serve as faculty and staff for the Center's other institutions, but also agreed to contribute a percentage of its profits for improving the Center's facilities.

The court order, however, cited no specific authority for its ruling that these agreements operated to prevent the distribution of the Clinic's assets to its stockholders. The gist of the court's decision is contained in the following paragraph:

> "The continuous course of conduct of the Clinic, in whatever legal form it was operating, partnership, corporate, or otherwise, constitutes a contractual commitment implied in fact to the other entities in the tri-partite arrangement constituting the Medical Center. Because of this unique relationship, to distribute assets of the corporation to individual stockholders would lead to unjust enrichment and an inequitable result."

The order concludes that the stockholders "have, by their acquiescence and by the fact they have profited from the commitment, waived whatever rights they had" to a distribution of assets, "unless and until the Clinic and its operations actually come to an end and its existence terminated. . . . The proposed dissolution required for the transfer of assets to the 'New Clinic' is not such a termination."

The key to the court's reasoning appears to be its finding that the Clinic, despite its legal status as a for-profit corporation, "has continuously comported itself as a charitable organization." The court seems to say that formal dissolution of such a corporation must be viewed differently from the dissolution of a more typical business corporation.

■ We can find no authority for such a conclusion; nor can we subscribe to any of the other theories relied upon by the court and by the Clinic. The record indicates that the Clinic has accepted all of the benefits, as well as the obligations, resulting from its status as a corporation: *i.e.*, an independent entity free from control by either the Hospital or Dartmouth. It cannot now be heard to claim some special status for purposes of the dissolution statute. That statute applies by its terms to every formal corporate dissolution, regardless of the meaning of the provisions in the Articles of Agreement.

■ Under RSA 293-A:88, II (Supp. 1983), the only question is what assets will remain to be distributed to the stockholders after "the payment of all . . . obligations . . . ." It is well established that "obligations" in this context refers to claims that "are reduced to dollars and cents . . . or can be so reduced by the application of recognized principles . . . ." *Pennsylvania Steel Co. v. New York City Ry. Co.*, 198 F. 721, 739 (2nd Cir. 1912), *cited in* 16A FLETCHER CYCLOPEDIA OF CORPORATIONS § 8218, at 534 n.28 (1979).

It is unclear what form of "obligation" the trial court found here. The court expressly denied the Clinic's request for a finding that its assets had been "impressed with a charitable use or trust . . . ." The court similarly refused to rule that, upon dissolution of the Clinic, its assets "must" be transferred to the New Clinic. Rather, the court stated that "upon reorganization the assets *may* be so distributed by vote of the stockholders." (Emphasis added.)

On the other hand, the court granted a request for a finding that the Clinic's agreements with the Hospital and Dartmouth constituted a "binding and enforceable obligation to transfer, in the event of dissolution . . . , all of its net assets to an organization which is operated to serve the patient care, teaching and research purposes of the Medical Center institutions."

It is undisputed that the agreements referred to by the court make no reference to the Clinic's dissolution. Nor are we aware of any form of obligation, other than a trust or express agreement, which could impose on the Clinic, *as a corporation*, a duty to restrict the purposes for which its assets are used *after* dissolution.

Similarly, we can find no basis for the court's ruling that the Clinic's stockholders have waived their right to a distribution of assets. Such a waiver would ordinarily require a formal vote. *See* RSA 293-A:80 (Supp. 1983). In any case, an argument that the stockholders were estopped from acquiring unrestricted control of the assets, due to their past actions toward the Hospital and Dartmouth, would more properly be made in an action brought against the stockholders as individuals; it would not directly affect the rights of the Clinic.

Of course, the Clinic may transfer its assets to the New Clinic *prior* to dissolution, as long as it complies with the provisions of RSA 293-A:80 to :82 (Supp. 1983). Those provisions, in addition to requiring a vote of the stockholders, give certain rights to stockholders who dissent from the transfer of assets.

The trial court's order implies that the stockholders' acquiescence in the Clinic's agreements was the equivalent of a vote to transfer all the Clinic's assets, without dissent. To permit such a circumvention of the requirement of a stockholder vote would be to render the statute meaningless. *Cf. Carson v. Isabel Apartments*, 20 Wash. App. 293, 297–98, 579 P.2d 1027, 1030 (1978) (sale agreement signed by all common stockholders could not bind corporation where statutory procedures relating to sale of all corporate assets were not followed).

We accordingly hold that there was no basis for the ruling in the Clinic's favor. The petition for a declaratory judgment should have been denied.

*Reversed.*

SOUTER, J., did not sit; the others concurred.