[No. 652-1.    Division One—Panel 1.    October 4, 1971.]

SUPER VALU STORES, INC., *Respondent,* v. C. E. LOVELESS *et al., Appellants.*

*LeSourd, Patten, Fleming & Hartung* and *Donald D. Fleming,* for appellants.

*Skeel, McKelvy, Henke, Evenson & Betts* and *R. L. Gemson,* for respondent.

UTTER, J.—Super Valu Stores, plaintiff, brought this action against C. E. Loveless and John J. Nelson, defendants, seeking $70,000 balance due on a contract to sell certain store fixtures. In a trial to the court, the trial judge found a valid contract existed and found for plaintiff. Defendants appeal and contend the circumstances surrounding dealings between the two parties show no contract was intended. The trial court found two letters between the parties constituted an offer and acceptance which created a valid enforceable contract.

Defendants purchased, exclusive of fixtures, certain real property located in Indiana known as the Highlander Market. Shortly thereafter, first the tenant, then the seller of the market, went into bankruptcy. As a result, they found themselves with their market, under lock and key, subject to an order restraining them from transferring or in any way affecting the right, title and interest in the real estate.

Plaintiff, who had previously held a security interest in certain store fixtures, acquired title to the fixtures from the trustee in bankruptcy after the tenant went into bankruptcy.

Defendants who wished to sell the market began negotiations with plaintiff for the fixtures. Negotiations consisted of a series of letters and telephone conversations. These negotiations dealt mainly with defendants' attempts to coordinate the sale of the fixtures with efforts to lease or sell the market. In order to sell or lease the market, defendants were required to obtain a release from the bankruptcy court. There was evidence indicating the defendants believed such a release was obtainable.

The result of these negotiations is in dispute; however, a new tenant was placed in possession of both the market and fixtures under negotiations to enter a lease. Before this transaction could close, the new tenant went into bankruptcy. Defendant Nelson was cited for contempt for disobedience to the restraining order, inasmuch as no release had been obtained from the bankruptcy court prior to occupancy of the market by the new tenant. This citation was resolved by agreement, but defendants were still forbidden

to sell the real property. Shortly after the bankruptcy of the new tenant, plaintiff demanded payment for the fixtures, plus 8 per cent interest.

Defendants contend evidence, consisting of documents and testimony, was presented which infers that the sale or lease of the property was an integral part of the sale of the fixtures and a condition precedent to any agreement between the parties. If this inference is taken, the release of the real property by the trustee in bankruptcy was essential to the sale of the fixtures. It is possible to infer from the evidence that the sale of the real property was so closely related to the transaction between plaintiff and defendant that the legal impossibility of selling the real property would indicate a mutual mistake or failure of a condition precedent that would prevent the formation of a contract between plaintiff and defendants. Defendants further contend the two letters of July 6, 1968, and July 19, 1968, which the trial court found to form a contract, were ambiguous, and a subsequent letter from respondent dated June 4, 1969, repudiates any contract which may have been made.

Plaintiff contends evidence and inferences drawn therefrom support the trial court finding of a valid contract with no conditions, no mistake, no repudiation and no ambiguity.

Defendants urge this court to find the facts of the case for itself, claiming the trial court findings are based entirely upon documentary or undisputed evidence.

While it is within the power of an appellate court to review de novo a lower court's findings of fact based solely upon documentary evidence, *Leinum v. Continental Cas. Co.*, 2 Wn. App. 233, 469 P.2d 964 (1970), this power does not extend to the situation in the instant case. Here there was testimony by Patrick Cashin of Super Valu and defendants Loveless and Nelson which described the parties' recollection of events and conversations. This testimony is necessary to understand the documentary evidence.

Where, in addition to documents, there is other evidence from which inferences may reasonably be drawn in favor

of either party, the appellate court may not substitute its judgment for that of the trial court. *Mood v. Banchero,* 67 Wn.2d 835, 410 P.2d 776 (1966); *Northern Pac. Ry. v. National Cylinder Gas Div. of Chemetron Corp.,* 2 Wn. App. 338, 467 P.2d 884 (1970).

Clarification and explanation offered by both the documents and testimony presented substantial evidence by which the trial court could conclude there was no ambiguity in the intent of the parties and no repudiation of any contract which may have been made. Both the testimony and documents are necessary to explain the removal from the July 19, 1968 letter of a paragraph making any agreement conditional upon the defendants obtaining a release from the bankruptcy court. Defendants contend this paragraph was removed because of the mistaken belief by both parties that the real property would be released by the bankruptcy court.

██ ██ Where there is a clear bona fide mutual mistake regarding material facts, equity will grant a rescission. *Stahl v. Schwartz,* 67 Wash. 25, 120 P. 856 (1912). A fact is material if no contract would have been entered into had there been no mistake concerning the fact. *Ross v. Harding,* 64 Wn.2d 231, 391 P.2d 526 (1964).

Here, there is substantial evidence from which it may be inferred there was no mistake at all; rather, there was an expectation on the part of defendants which failed to materialize. In addition, there is substantial evidence any mistake was unilaterally made by defendants. It was defendants who authored the original condition linking the status of the market to the sale of the fixtures. Defendants were the source of information explaining the inclusion of the condition and it was upon defendants' understanding of a conversation with the trustee in bankruptcy and their attorney that the condition was removed. "A mutual mistake must be one involving both parties, a mistake *independently* made by each party." *Pepper v. Evanson,* 70 Wn.2d 309, 313, 422 P.2d 817 (1967). The Supreme Court of the State of Washington has held a unilateral mistake is not

grounds for setting aside a contract of release between an accident victim and an insurance company. *Pepper v. Evanson, supra.* However, the concept of mutuality of mistake is not one that lends itself easily to the statement of broad principles and just working rules. Where a mistake is unilateral, a court will consider and weigh additional factors which accompany the mistake. 3 A. Corbin, Contracts § 608 (1960). In the instant case, there is substantial evidence to support the trial court in finding there was no mistake. If there was a mistake, it was one-sided under circumstances which were such that equity would not be served by setting aside the contract.

Affirmed.

HOROWITZ, C.J., and WILLIAMS, J., concur.

Petition for rehearing denied November 24, 1971.