[No. 1606-1.  Division One.  July 16, 1973.]

RAMON E. KRUGER, *Respondent*, v. REDI-BREW CORPORATION, *Appellant*.

*Robbins & Merrick* and *Ivan E. Merrick, Jr.,* for appellant.

*Abbott & Curtis* and *Andrew Curtis, Jr.,* for respondent.

HOROWITZ, J.—Plaintiff Ramon E. Kruger sued defendant Redi-Brew Corporation to recover back the purchase price of merchandise and equipment sold and delivered by defendant to plaintiff. Defendant denied plaintiff's claims and counterclaimed for the unpaid balance of the purchase price owing on the items sold and delivered. The court entered judgment for the plaintiff and dismissed defendant's counterclaim. Defendant appeals.

Defendant sells pre-portioned servings of various beverages, dispensing machines, and related products for resale by its dealers. In 1970, defendant's authorized representative, Mr. Radke, discussed with plaintiff in Seattle, Washington, the latter's possible appointment as a dealer for defendant's products. During the discussion Mr. Radke, to induce plaintiff to become a dealer, represented that the defendant had "lined up" a chain store operation known as the "7-11" stores in the Northwest as customers for defendant's products, and that these stores would be available to defendant as a starter route upon defendant becoming a dealer. The representation was material. Plaintiff, in reliance thereon, agreed to become a dealer, was given defendant's printed form of dealership which already bore defendant's signature and which plaintiff believed he signed, and delivered to Mr. Radke a check for $5,000 to be applied on the purchase price of items to be ordered from defendant with which to service the dealership.

The following week plaintiff traveled to defendant's offices in California to receive instruction on how to perform his dealership. While there, the parties signed a second dealership agreement similar to the first. Plaintiff also purchased $6,269.75 of items required in the performance of

his dealership agreement. The initial $5,000 payment was applied on the purchase price, leaving an unpaid balance of $1,269.75. Subsequently, defendant shipped the items purchased to the plaintiff in Seattle.

Upon plaintiff's return to Seattle, he learned for the first time from the manager of the 7-11 stores that the stores were not "lined up" as represented and would not be available to plaintiff as a starter route. The store manager had made arrangements with a competitor to purchase the latter's products. Plaintiff complained to defendant and the latter promised to check into the matter. No change in the situation took place. Plaintiff made no further effort to resell the merchandise. He erroneously believed he had to wait 30 days before he could rescind. Upon expiration of the 30-day period, he offered to return the items received to defendant and demanded repayment of the $5,000 paid. Defendant refused his demands. Plaintiff then sued for rescission for breach of defendant's oral agreement to supply the 7-11 stores as starting customers for plaintiff's dealership, and for defendant's claimed fraudulent misrepresentation that the 7-11 stores were lined up so as to be available to plaintiff as starting customers for his dealership. Defendant, by answer, denied plaintiff's claims and counterclaimed for $1,269.75, the unpaid balance owing on the items previously shipped to plaintiff. From the judgment in favor of the plaintiff, defendant appeals.

Defendant originally included in its assignments of error that the court had no jurisdiction over defendant because the long-arm statute, RCW 4.28.185, was inapplicable. Defendant abandoned this assignment during oral argument, leaving only the issue as to the merits of its counterclaim.

Defendant contends the court erred in finding that the printed form of dealership contract executed by the parties

is mainly a list of conditions and restrictions against plaintiff. That in fact there was actually an oral agreement between the parties under which plaintiff agreed to sell defendant's products and defendant agreed to supply merchandise and provide a starter route consisting of certain 7-11 stores, in the Puget Sound area, for plaintiff.

Defendant thought it had the 7-11 stores available for plaintiff, but in fact did not. That the availability of the route of 7-11 stores as beginning customers for plaintiff was an important provision to plaintiff as he would be unable to make sufficient money to survive financially without such beginning route.

Finding No. 3.

The finding is based upon evidence of negotiations preceding the execution of the first printed form of dealership agreement. Neither the first nor second printed form contains any promise concerning the 7-11 stores as claimed by plaintiff. The court held the evidence admissible because "the alleged written contract signed by the parties is illusory." Conclusion No. 2. Plaintiff, in supporting this conclusion, contends the contract is void because the area covered by the dealership is expressly stated in the second agreement as a matter "to be determined," and furthermore, the contract contains no express obligation to sell merchandise to plaintiff to service the dealership. Defendant contends the contract is not illusory because it contains an implied obligation to sell plaintiff the needed merchandise. Defendant makes no argument concerning the "to be determined" provision concerning the dealership area.

It is possible to affirm the decree on the basis of the pleadings and proof without passing on the contentions of the parties described. Plaintiff's complaint alleged the 7-11 stores "contrary to the agreements and representations of defendant, . . . at no time had agreed to become customers of the said dealership and refused to so become customers." Plaintiff testified defendant's agent, Mr. Radke, represented that defendant had "lined up" the 7-11 stores in the Northwest as customers for defendant's products and that these stores would be available to defendant as a starter route upon defendant becoming a dealer. Defendant's answer denied plaintiff's allegations of misrepresentation and promise. Mr. Radke, in his testimony, denied he made the statements and promise testified to by plaintiff. The court accepted plaintiff's version of the facts. In the court's oral decision he stated he thought the

start in with the 7-11 starter route . . . was part of the deal.

The defendant thought that they had 7-11 lined up but as it turned out they didn't. And when it turned out that way, . . . the plaintiff Krueger [*sic*] withdrew and there was no deal, and he did this in a timely way.

Finding No. 3 is based on the acceptance of plaintiff's testimony. In light of the court's oral opinion, finding No. 3 fairly understood means the court accepted plaintiff's testimony that Mr. Radke had made the representation that he had the 7-11 stores lined up. We so treat that finding. *See LaHue v. Keystone Inv. Co.*, 6 Wn. App. 765, 496 P.2d 343 (1972).

■ The court did not find that the misrepresentation was fraudulently made. Nevertheless, the rescission ordered by the court is proper. A material innocent misrepresentation is a sufficient representation on which to base a claim for rescission. It is unnecessary for the purpose of affording the remedy of rescission to find that the representation is fraudulent. *See Anthony v. Warren*, 28 Wn.2d 773, 184 P.2d 105, 190 P.2d 88 (1947); *Algee v. Hillman Inv. Co.*, 12 Wn.2d 672, 123 P.2d 332 (1942); Restatement of Contracts §§ 470, 476 (1932); 12 S. Williston, *Contracts* § 1500 (3d ed. 1970). The court found and concluded plaintiff made a timely rescission (finding No. 4 and conclusion No. 2), and in effect found defendant should have taken back the items purchased and refunded the purchase price paid.

■ The merchandise included in the subject matter of the sale has deteriorated since the offer to return it at the time plaintiff offered to rescind. That deterioration does not prevent rescission. The court found "[t]he product appears to be deteriorated by reason of defendant's failure to take such back." Finding No. 4.

The judgment is affirmed.

SWANSON, C.J., and FARRIS, J., concur.