[No. 5184-1. Division One. March 13, 1978.]

A. E. Enrico, *Appellant,* v. Rodger D. Overson,
et al, *Respondents.*

*Hoover & Donais* and *John C. Hoover,* for appellant.

*Casey, Pruzan, Kovarik & Shulkin* and *John F. Kovarik,*
for respondents.

Dore, J.—Appellant Dr. Enrico filed a breach of contract suit against respondent builder for his failure to build a house at an agreed price. The case was tried without a jury and the trial court rendered a judgment in favor of the respondent. Appellant appeals from that decision.

## Facts

Appellant Dr. Enrico presented respondent builder Overson with a set of plans to build a house. Those plans contained a detailed computation of the "finished" and "unfinished" square footage of the home. Respondent testified that those figures on the plans constituted a material element to him in computing the price of his bid for construction of the doctor's home. Appellant made internal markings and changed the plans to the extent that they needed redrafting in order to qualify for a building permit. The plans were redrafted by an architect who did not indicate on the plans a square footage computation. After receiving the new plans the respondent checked the square footage in the two sets of plans and made a recomputation and found that the original computation supplied to him by the appellant was materially in error. He immediately called the appellant to notify him of the error and that he would have to reestimate his price to build his home. A week later when the respondent called appellant to give him his new figures for the house construction, he was advised that the contract had been let to another builder.

The appellant contends the mistake was a unilateral mistake of the builder rather than a mutual mistake. He further contends that relief by way of rescission for a unilateral mistake is only granted when the mistake is known or should be known to the other party prior to the entry of the contract. He contends that the mistake was not known to him prior to entry into the contract and that he had no knowledge of how the respondent arrived at his offer and no reason to know of the mistake, as the offer was not so significantly lower from other offers he had received, to give constructive notice that a mistake had been made. There

was a difference of 480 square feet in finished floor space between the two plans.

The home was subsequently built by another builder. Appellant sued the respondent for the difference between the costs of building appellant's house in the original contract and the completed building cost.

## ISSUE

Whether there was credible evidence in the record to substantiate the court's findings of fact and conclusions of law that the parties had made a mutual mistake on a material fact, which would entitle the respondent builder to rescind his bid to build appellant's home at a fixed price?

## DECISION

The trial court, after hearing the testimony of both parties and their respective witnesses, made the following findings which were not objected to or made assignments of error. These findings were:

1. That on October 27, 1972 the plaintiff, as owner, and the defendant OVERSON, as contractor, entered into a written contract for the construction of a residence on the lot of plaintiff, for the stated price of $50,500.00, plus applicable State sales tax.

2. That prior to the execution of said contract, the plaintiff had presented to defendant OVERSON a set of building plans which depicted the home the plaintiff desired be constructed. Said plans contained revisions made thereon by the plaintiff himself, and also contained a computation of the "finished" and "unfinished" square footage of the home depicted thereon. The computation of square footage was either in pencil or in pen and ink.

3. In preparing his bid, which eventually became the contract price stated above, the defendant OVERSON utilized the square footage figures as the same appeared on said plans, said square footage figures being a material element in the computation of said bid and contract price.

4. That the plans as provided to defendant OVERSON by plaintiff were so marked up by plaintiff that the same required redrafting in order to qualify for the obtaining of a building permit. The revisions of the plaintiff should

not, however, have changed the overall square footage of the home depicted on said plans.

5. Mr. Robert Arndt was engaged to redraft said plans and delivered the new plans to plaintiff on October 26, 1972. The defendant OVERSON received said plans on October 26, or October 27, 1972. The new plans did not contain a computation of the square footage of the depicted residence as the original plans had.

6. Within two weeks after receiving the new plans, defendant OVERSON as a check on the square footage of the two sets of plans computed the square footage as shown on the new set of plans and discovered an error in finished floor space of some 480 square feet. Defendant OVERSON immediately telephoned the plaintiff, advised plaintiff of the error discovered, and that he would have to re-estimate the plans.

7. When defendant OVERSON again called to advise plaintiff of the revised figures, plaintiff advised that he had given the contract to another person.

The trial court also made the following findings of fact and conclusions of law which appellant made assignments of error.

8. After being advised of the discovery of the mistake by defendant OVERSON, the plaintiff gave no written response to defendant OVERSON.

9. When advised of the mistake plaintiff had made no material change in his position in reliance upon said contract.

## CONCLUSIONS OF LAW

1. That the defendant OVERSON was mislead [sic] by the figures appearing on the original plans provided by plaintiff and the mistake in figuring the square footage of the residence depicted on said plans was attributable in part at least to the plaintiff.

2. That the defendant OVERSON acted in good faith without gross negligence, gave prompt notice of the mistake upon discovery thereof, and plaintiff had not materially changed his position in reliance upon said contract.

3. That said mistake rendered said contract voidable by the defendant OVERSON, and he did so elect by timely notice to plaintiff.

4. Plaintiff's complaint should be dismissed with prejudice.

A review of the record clearly indicates there is testimony if believed, to substantiate the court's findings of fact Nos. 8 and 9, and we hold that appellant's assignments of error on such findings of fact are without merit. We also hold that appellant's challenge to the court's conclusions of law are invalid.

In *Kruger v. Redi–Brew Corp.*, 9 Wn. App. 322, 326, 511 P.2d 1405 (1973), this court stated:

> A material innocent misrepresentation is a sufficient representation on which to base a claim for rescission. It is unnecessary for the purpose of affording the remedy of rescission to find that the representation is fraudulent. *See Anthony v. Warren*, 28 Wn.2d 773, 184 P.2d 105, 190 P.2d 88 (1947); *Algee v. Hillman Inv. Co.*, 12 Wn.2d 672, 123 P.2d 332 (1942); Restatement of Contracts §§ 470, 476 (1932); 12 S. Williston, *Contracts* § 1500 (3d ed. 1970). The court found and concluded plaintiff made a timely rescission . . .

In *Ross v. Harding*, 64 Wn.2d 231, 391 P.2d 526 (1964), the court found a mutual mistake justifying rescission, where the seller failed to secure the consent of the lessor in assigning the leasehold interest in which the store was located to the purchaser and it was established both parties had relied on securing such consent.

In *Ross,* the court stated on pages 239–40:

> The trial court expressly found that "except as to the above lease there was no evidence of fraud or misrepresentation by anyone." This does not amount to a finding that there were fraudulent misrepresentations concerning the existence of a lease. But, absent fraud, the undenied misrepresentation would at least necessarily have to be characterized as a mutual *mistake of fact. Where there is a clear bona fide mutual mistake regarding material facts, equity will grant a rescission. Stahl v. Schwartz,* 67 Wash. 25, 120 Pac. 856; *Lindeberg v. Murray,* 117 Wash. 483, 201 Pac. 759; *Sutton v. Peterson,* 193 Wash. 175, 74 P.2d 884.
>
> That such an equitable principle has long been a part of the common law is demonstrated by the opinion in *Allen v. Hammond,* 36 U.S. 63, 71 (11 Peters 63), 9 L.

Ed. 633 (1837), in language appropriate to the facts of this case:

"In 1 Fonbl. Eq. 114, it is laid down, that where there is an error in the thing for which an individual bargains, by the general rules of contracting, the contract is null, as in such a case, the parties are supposed not to give their assent. And the same doctrine is laid down in Puffendorff's Law of Nature and Nations, b.1, c.3, § 12. The law on this subject is clearly stated, in the case of *Hitchcock v. Giddings,* Daniel's Exch. 1, (s.c. 4 Price 135); where it is said, that a vendor is bound to know that he actually has that which he professes to sell. . . ."

The mistake of fact must, however, be as to a fact which is material. 12 Am. Jur. § 126, p. 618. It has been said that the true test as to materiality is whether the contract would have been entered into had there been no mistake. *Lindeberg v. Murray, supra.* As was said in *Lindeberg,* we are clear that there was such a mistake here. That a valid lease with approximately 3 years to run plus a 5–year renewal option is a material and substantial part of the consideration for the agreement to purchase the grocery business is self–evident.

(Italics ours.)

*See also Clover Park School Dist. 400 v. Consolidated Dairy Prods. Co.,* 15 Wn. App. 429, 550 P.2d 47 (1976), where this court set guidelines for a bid rescission based on a unilateral mistake by a bidder.

This is a case where a party to a contract seeks to obtain the benefits of an error or misstatement of fact that he himself injected into the transaction. The trial court found that the calculations were on the plans when appellant gave them to the respondent builder for the purpose of securing a bid, and there is no question that the respondent relied on these figures of square footage of "finished" and "unfinished" space on the plans in computing the price on his initial bid. As soon as he found his error, he called the appellant and advised him of his mistake and that he would have to recompute his bid figure. Before respondent builder could report back to the appellant, the latter signed a building contract with another builder, terminating the agreement between the parties.

We hold that a difference of "480 square feet of finished construction" in building plans upon which the builder relied in making his bid price to build appellant's home, was a material basis for his initial bid of $50,500. Respondent was entitled to rescind this agreement for he promptly notified the appellant of this mutual mistake when he discovered the same.

We affirm the decision of the trial court wherein judgment was rendered for the respondent.

WILLIAMS and ANDERSEN, JJ., concur.