[No. 2384–3.   Division Three.   May 31, 1978.]

CHARLES H. CARSON, ET AL, *Appellants,* v.
ISABEL APARTMENTS, INC., ET AL,
*Respondents.*

*Hugh B. Horton* and *Horton, Wilkins, Faurholt & Kerr,* for appellants.

*Edward H. McKinlay* and *Sullivan & McKinlay,* for respondents.

GREEN, J.—The buyers, Charles Carson and Cleta Daggett, appeal from a judgment dismissing their suit against the sellers for specific performance of an earnest money agreement or, alternatively, for damages from the sellers for their failure to perform the agreement.

This appeal presents two issues: (1) Did the court err when it held that the agreement was unenforceable because the parties had made a mutual mistake of fact when they entered into it? and (2) Did the court err when it held that the corporate owner of the real estate was not bound by the agreement?

In June 1975, the sellers Charlie and Helen Cox, entered into an earnest money agreement for the sale of an apartment house with the buyers, Mr. Carson and Mrs. Daggett. The agreement provided that the buyers would pay $130,000 for the building, with a $12,000 initial down payment, payments of $950 or more per month, and an $8,000 balloon payment to be made in 1976. Although the agreement did not refer to the underlying Federal Housing Authority (FHA) mortgage, the parties testified they contemplated that the mortgage would remain on the premises and the Coxes would pay the mortgage during the term of the contract. Under this arrangement, the Coxes stood to

profit from the 4 percent interest differential between the rates of interest on the contract balance and the underlying mortgage.

At the time of entering into the earnest money agreement, Mr. Carson and Mrs. Daggett thought that the Coxes owned the property. In fact, the property was owned by Isabel Apartments, Inc., a corporation. All of the common stock was held by the Coxes, and 100 shares of preferred stock was held by the FHA. The articles of incorporation specified that the holders of the common stock could not transfer ownership of the corporate assets without the approval of the holders of a majority of the preferred stock. However, the Coxes had the right to purchase the preferred stock for $100 whenever the mortgage was paid. The Coxes acquired their stock in the corporation in 1956 and from that time failed to hold corporate meetings or otherwise formally deal with corporate matters, although they did pay the annual license fee to the State of Washington. When they entered into the earnest money agreement, the Coxes had never seen a copy of the articles of incorporation and were not aware of the restriction upon the transfer of the corporate assets.

Subsequent to the agreement but prior to the closing, Mrs. Daggett mortgaged her home and Mr. Carson listed his home with a realtor in order to secure enough money to close the purchase of the apartment building. Immediately prior to the closing date of September 1, 1975, the Coxes learned for the first time that the FHA would not agree to the sale unless the mortgage was paid off and the preferred stock retired. In order to complete the transaction, the Coxes would have lost the interest differential amounting to about $7,165 and would have been required to borrow approximately $30,000 at 9 percent to pay off the mortgage balance.

The Coxes notified the buyers of the above facts prior to the closing date. All parties attempted to salvage the transaction, but the alternative proposals involved a present borrowing of money by the sellers, an arrangement

unacceptable to the Coxes. This suit for specific performance or, in the alternative, damages, followed.

Initially, the buyers contend that the court erred in entering conclusion of law No. 2:

> It was the intent of all parties that from the payments made on the real estate contract the seller would make monthly mortgage payments. Prior to the closing date it was known to all parties that this could not be fulfilled because of the necessity of consent thereto by FHA and the fact that FHA refused to consent. This constituted a mutual mistake of a material fact.

Specifically, the buyers claim that the mistake was unilaterally made by the sellers. We agree.

█ A party seeking to rescind an agreement on the basis of a mutual mistake must show by clear, cogent and convincing evidence that the mistake was *independently* made by both parties. *Super Valu Stores, Inc. v. Loveless*, 5 Wn. App. 551, 554, 489 P.2d 368 (1971), *review denied*, November 24, 1971; *Pepper v. Evanson*, 70 Wn.2d 309, 313, 422 P.2d 817 (1967); *Vermette v. Andersen*, 16 Wn. App. 466, 469, 558 P.2d 258 (1976).

The facts of this case are analogous to those of *Super Valu Stores, Inc. v. Loveless, supra.* In that case, the owner of a bankrupt market contemplated selling the business. With this purpose in mind, he negotiated with the owner of the market's fixtures for the purchase of those fixtures. The market owner believed that he would be able to get a release from the bankruptcy court to sell the business. The fixtures' owner was aware of this belief, but it was never made a condition of the contract. When, in fact, the bankruptcy court refused to grant a release for the sale of the business, the market owner, alleging a mutual mistake of material fact, refused to perform the contract for the purchase of the market's fixtures. The fixtures' owner successfully sued for specific performance. The court found that any mistake was unilaterally made by the market owner. Similarly, in the instant case, the parties' intention that the FHA mortgage remain on the premises was not made a

condition to the agreement. In addition, any mistake as to the ability of the Coxes to sell the property while retaining the FHA mortgage was made by the Coxes alone. It is undisputed that the buyers had no independent knowledge of the terms of the mortgage but merely accepted the Coxes' belief that they could retain the mortgage after selling the property. Nor are the present facts such as to call for rescission of the contract on the basis of unilateral mistake.[1]

Since we must reverse on the issue of mutual mistake, it is necessary to consider whether the buyers are entitled to specific performance or whether their relief lies in damages.

The buyers contend that the corporation can be ordered to specifically perform the contract on either of two theories: (1) the Coxes were acting with apparent authority of the corporation, or (2) the corporate veil can be pierced because the Coxes had abused corporate formalities. The record does not support either theory.

Moreover, the proposed sale cannot bind the corporation because the Coxes failed to comply with the terms of RCW 23A.24.020. *Beall v. Pacific Nat'l Bank*, 55 Wn.2d 210, 347 P.2d 550 (1959). RCW 23A.24.020 requires that before substantially all of a corporation's assets can be sold outside the ordinary course of business (1) the board of directors must adopt a resolution recommending such sale and submit the resolution to a vote at a meeting of the shareholders, and (2) the shareholders must authorize such sale by an affirmative vote of the holders of two-thirds of the shares entitled to vote thereon. Here, the apartment building constituted all of the assets of Isabel Apartments, Inc. Aside from these statutory requirements, the articles of incorporation of the Isabel Apartments, Inc., require

---

[1] In 3 A. Corbin, *Corbin on Contracts* § 608, at 669 *et seq.* (1960), Professor Corbin notes certain instances in which a unilateral mistake may be grounds for rescission of a contract. He also notes that several courts have refused to grant specific performance in situations where one party contracted under a unilateral mistake and specific performance would cause serious hardship. *See* 3 A. Corbin, *Corbin on Contracts* § 612 (1960).

approval of the preferred shareholders (FHA) before any sale can take place. Consequently, the attempted sale cannot bind the corporation because the Coxes failed to comply with RCW 23A.24.020 and the corporate articles.

■ Notwithstanding, the buyers urge that the Coxes should be required to specifically perform the agreement. Although the Coxes are personally liable because they signed the earnest money agreement, *see Matsko v. Dally,* 49 Wn.2d 370, 374, 301 P.2d 1074 (1956); and Seavey, *Agency* § 124, at 213 (1964), they cannot be ordered to specifically perform because they do not have title to the property. *Miller v. Dyer,* 20 Cal. 2d 526, 127 P.2d 901, 141 A.L.R. 1428 (1942). A decree of specific performance would be of no avail, for equity will not compel the Coxes to obtain title. In *Miller,* the court did order specific performance because the defendants there had an equitable interest in the property. Here, the Coxes had neither a legal nor an equitable interest in the apartment building.[2]

■ Therefore, the buyers are limited to the alternative relief, damages. The sellers claim they are not liable for damages because the earnest money agreement provides that the rights of the purchaser are terminated if the seller does not supply a title policy containing no exceptions other than the encumbrances or defects noted in paragraph 1 of the agreement. Paragraph 1 states that the sellers' title is to be free of encumbrances except covenants, easements, and restrictions of record. We do not believe that the lack of title in the Coxes is an exception within the meaning of that term in the earnest money agreement. Furthermore, the agreement provides that the purchasers may waive any defect. The Coxes should not be able to escape liability for damages when the buyers stand willing to perform.

---

[2]The buyers cite *Slover v. Winston,* 155 Va. 971, 157 S.E. 150 (1931), in support of their argument for specific performance. However, that case involves a situation where *all* of the shareholders of the corporation were parties to the agreement. In such a case, the court held that the corporate entity should be bound by the contract. Here, all the stockholders were not parties to the agreement.

■ The measure of damages is dependent upon whether the Coxes were unable, or merely unwilling; to obtain title to the apartment house so that they could convey it to the buyers. If the seller is unable to convey, damages are limited to the return of the earnest money and legal interest thereon. *Seymour v. Jaffe*, 78 Wash. 1, 138 P. 276 (1914). If the buyers show that the Coxes were able to pay off the mortgage, but were unwilling to do so, the Coxes will be liable for compensatory damages less any damages that the buyers could have mitigated.

Since the record is incomplete on this issue, we must remand the case to the trial court for a determination of the buyers' damages.

Reversed and remanded.

MUNSON, C.J., and ROE, J., concur.

Reconsideration denied June 30, 1978.

Review denied by Supreme Court November 3, 1978.