[No. 4404–1–III.   Division Three.   January 13, 1983.]

St. Paul Fire & Marine Insurance Company,
*Appellant,* v. Arlie Updegrave,
et al, *Respondents.*

*Jerry M. Makus* and *Makus & Makus,* for appellant.

*Gerald J. Moberg* and *Ries & Kenison,* for respondents.

McINTURFF, J.—Is a showing of actual monetary damages a prerequisite to an award of attorney's fees under the Consumer Protection Act? We hold that attorney's fees may be awarded independently, without a showing of actual monetary damages.

In September 1973, the Lad Irrigation Company (Lad) obtained insurance from the St. Paul Fire & Marine Insurance Company (St. Paul). The initial policy was effective for 3 years and was later extended by mutual agreement for an additional year. Premiums were to be paid on a composite rate basis.[1] The policy provided that premiums could only be modified by a written endorsement issued by St. Paul and countersigned by a St. Paul agent and then only prospectively at or before the anniversary date.

In March 1974, in contravention of the policy language, St. Paul increased Lad's premiums and retroactively applied the increase back to September 1, 1973. St. Paul raised Lad's premiums in the same manner in March 1975 and March 1976. Lad, unaware of its rights under the policy, voluntarily paid the increased premiums. In July 1977, St. Paul sent Lad an estimated bill for the 1976–77 year which reflected an approximately 200 percent premium increase over the prior year. This premium adjustment was not included in an endorsement nor was it made at or before the anniversary date as required by the policy. Lad

---

[1]Under a composite rate basis, the total yearly premium is divided by the insured's estimated sales. This quotient is further divided by 12 to obtain a composite monthly factor which is then multiplied by each month's actual gross receipts to determine the monthly premium due.

refused to pay and St. Paul then agreed to charge the composite rate from the previous year.

In September 1977, St. Paul issued a 2–month binder to Lad. In November, a new policy was issued for the 1977–78 year. The trial court found this new policy failed to contain an endorsement which set the premium rate. However, St. Paul's underwriters advised its agents the premium would probably not increase more than 10 percent. In June 1978, St. Paul submitted its bill, which reflected a 280 percent premium increase to be applied retroactively. Lad refused to pay this premium.

St. Paul sued Lad and Arlie and Aurora Updegrave individually for the amount of the premium. Lad and the Updegraves counterclaimed, alleging St. Paul had overcharged in the past and had violated the Consumer Protection Act. RCW 19.86.

The trial court determined Lad owed St. Paul $7,430.80. This was the net amount owed for unpaid premiums. It also found St. Paul's attempts to change the premium amounts in the middle of an anniversary year without a valid endorsement and its overcharging in excess of the contracted premium rate constituted a per se violation of the Consumer Protection Act. The trial court specifically found St. Paul's practices to be in violation of its duty to act in good faith. On the basis of this per se violation, Lad was awarded $1,000 in treble damages plus $5,000 attorney's fees and $196.25 in costs.

■ Initially, St. Paul challenges various findings of fact made by the trial court. An appellate court will not substitute its judgment for that of the trial court when there is substantial evidence to support the trial court's findings. *Beeson v. ARCO,* 88 Wn.2d 499, 503, 563 P.2d 822 (1977); *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 575, 343 P.2d 183 (1959). There is substantial evidence if there is sufficient evidence to persuade a fair–minded rational person of the truth of the declared premise. *Beeson,* at 503; *In re Snyder,* 85 Wn.2d 182, 185–86, 532 P.2d 278 (1975). We have considered the challenged findings, searched the

record, and find there is substantial evidence to support those findings of fact which are necessary to support the trial court's conclusions of law.[2]

■ The Consumer Protection Act declares unlawful any unfair or deceptive practices that occur in trade or commerce. RCW 19.86.020. A violation of the Consumer Protection Act may be proven by showing a per se violation. The elements of a per se violation are:

(1) the existence of a pertinent statute; (2) its violation; (3) that such violation was the proximate cause of damages sustained; and (4) that they were within the class of people the statute sought to protect.

*Wilkinson v. Smith,* 31 Wn. App. 1, 9, 639 P.2d 768 (1982);

---

[2]Finding of fact 17 states:

Plaintiff submitted a bill to the Defendants for insurance coverage for the 1977–78 year in the amount of $30,834.00. This amounted to a substantial over–charge by the Plaintiff of the premiums due Plaintiff during the policy year from November 1, 1977, to November 1, 1978. The actual premium due was $11,022.80. As a result of this over–charge, *Defendants were damaged in the difference between this over–charge and the actual premium due* and were required to bring this counterclaim in order to establish the over–charge and are entitled to a recovery of the amount over–charged to offset the claims of the Plaintiff.

This finding is erroneous because Lad never paid the full amount of the bill. However, this finding is superfluous in light of our disposition of the appeal.

Finding of fact 19 states:

St. Paul's conduct of attempting to change [premium] amounts in the middle of an anniversary year without a valid endorsement, and further by overcharging the Defendants on several successive years in amounts in excess of the contracted premium rate, are unfair and deceptive [practices] that occurred in trade and commerce and these practices were repeated by ST. PAUL and are likely of continued repetition. *The practice of changing premiums and overcharging engaged in by St. Paul violates the duties placed upon the Plaintiff insurance carrier to treat the insureds in good faith* with full disclosure of policy information is a violation of the administrative regulations and statutes governing insurance companies' conduct with their insured and amounts, in addition then, to a per se violation of the Washington State Consumer Protection Act.

(Italics ours.) This finding contains findings of fact and conclusions of law. The statement that St. Paul violated its duty to act in good faith is a factual determination and is supported by substantial evidence. *Miller v. Indiana Ins. Cos.,* 31 Wn. App. 475, 479, 642 P.2d 769 (1982). The conclusions of law have been treated as such. *State v. Reader's Digest Ass'n,* 81 Wn.2d 259, 266–67, 501 P.2d 290 (1972).

*Dempsey v. Joe Pignataro Chevrolet, Inc.*, 22 Wn. App. 384, 393, 589 P.2d 1265 (1979). Lad satisfied all of the elements of a per se violation.

The first element requires the existence of a pertinent statute. RCW 48.01.030 establishes a duty of good faith and fair dealing in all insurance matters:

> The business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters. Upon the insurer, the insured, and their representatives rests the duty of preserving inviolate the integrity of insurance.

■ The second element requires a showing that the pertinent statute has been violated. The trial court specifically found that St. Paul did not act in good faith. This is a factual question. *Miller v. Indiana Ins. Cos.*, 31 Wn. App. 475, 479, 642 P.2d 769 (1982). The trial court's determination was based on its finding that St. Paul had overcharged Lad during the 1974–75 and 1975–76 policy years;[3] that St. Paul attempted to increase Lad's premiums midway through the 1976–77 policy year in direct contravention of the policy; that St. Paul's underwriters advised its agent that the premium for the year commencing November 1, 1977, would not increase over 10 percent; that when St. Paul submitted its bill 6 months into the policy year, the bill reflected a 280 percent increase which was to be retroactively applied; and that Lad would not have purchased insurance from St. Paul had it been timely advised of the premium increase. The finding that St. Paul failed to act in good faith is supported by substantial evidence and should not be disturbed on appeal. *Thorndike v. Hesperian Orchards, Inc., supra* at 575.

The third element requires the violation to be a proximate cause of the damages sustained. This requires St. Paul's practices to have proximately caused Lad's damages.

---

[3]The trial court held Lad was estopped from claiming any offset for the overcharges from 1973 to 1977 and dismissed with prejudice that portion of the counterclaim.

St. Paul contends that since Lad did not suffer any specific monetary damages, it has no cause of action under the act.

■ Damages, for purposes of the Consumer Protection Act, must be broadly construed so that the beneficial purpose of the act may be served.[4]

> The treble damage and reasonable attorneys' fees provisions of the Washington Act are designed to [provide] sufficient financial rewards to victorious consumers on two levels: (1) on the individual level, to enable the injured plaintiff to pursue his own claim; and, (2) on the public level, to reimburse the individual plaintiff and his counsel for enforcing the Act on behalf of the general citizenry.

Comment, *Reasonable Attorneys' Fees and Treble Damages—Balancing the Scales of Consumer Justice,* 10 Gonz. L. Rev. 593, 598 (1975).

■ The consumer need not show specific monetary damages to recover under the act. In *Tallmadge v. Aurora Chrysler Plymouth, Inc.,* 25 Wn. App. 90, 605 P.2d 1275 (1979), a consumer purchased what had been advertised as a new car. It was not. Although the trial court found Mr. Tallmadge had sustained no actual damages, the award of attorney's fees pursuant to the Consumer Protection Act was upheld on appeal.

> Although the trial judge did not award Tallmadge pecuniary damages, the record indicates that *he suffered injuries for purposes of the Consumer Protection Act* in that he was inconvenienced, deprived of the use and enjoyment of his property, and received an automobile with defects needing repair. The trial judge did not err in awarding attorney's fees.

(Italics ours.) *Tallmadge,* at 93–94.

In *Tallmadge,* the attorney's fees award was based on the consumer's inconvenience and the loss of his use and enjoyment of his property. The rationale underlying *Tall-*

---

[4]RCW 19.86.920 provides in pertinent part:

"The legislature hereby declares that the purpose of this act is to . . . protect the public and foster fair and honest competition. . . . To this end this act shall be liberally construed that its beneficial purposes may be served."

*madge* is even more compelling in the present case. Here, St. Paul's unfair and deceptive actions caused Lad to defend this lawsuit and to prosecute a counterclaim to establish St. Paul's consumer protection violations.

*Tallmadge* aptly pointed out the distinction between the common law concept of damages and damages as applied to the Consumer Protection Act. The consumer who is forced to defend an action which is premised upon unfair and deceptive acts will generally sustain damages for purposes of the Consumer Protection Act. These damages include the consumer's inconvenience, financial considerations such as loss of time in helping prepare the case, actual time spent in court, and litigation costs for attorney's fees, filing fees, investigative expenses, and expert witness fees.

Practically speaking, the greatest expense to be borne by a consumer in defending an action such as the present one is for attorney's fees. In this day when attorney's fees generally range from $50 to $150 per hour, any litigation demanding the talent and expertise of an attorney necessarily involves significant sums of money. For example, the trial court found a reasonable amount for Lad's attorney's fees in defending this suit and prosecuting its counterclaim was $5,000. To say that Lad has not been damaged for purposes of the Consumer Protection Act is to ignore the obvious.

The final element requires that Lad be within the class sought to be protected by the insurance code. As an insured under a policy issued by an insurance company doing business in this state, Lad is within this class. RCW 48.01.030; *Salois v. Mutual of Omaha Ins. Co.,* 90 Wn.2d 355, 581 P.2d 1349 (1978).

The trial court properly found St. Paul's practices of overcharging and attempting to change premium amounts in the middle of an anniversary year to be recoverable per se violations of the Consumer Protection Act. The remedies available for such a violation are set forth in RCW 19.86-.090:

Any person . . . may bring a civil action in the superior court to enjoin further violations, to recover the actual damages sustained by him, or both, *together with the costs of the suit, including a reasonable attorney's fee,* and the court may in its discretion, increase the award of damages to an amount not to exceed three times the actual damages sustained: *Provided,* That such increased damage award for violation of RCW 19.86.020 may not exceed one thousand dollars.

(Some italics ours.)

This statute allows an aggrieved party to (1) bring a civil action for an injunction, and/or to recover his actual damages, and (2) to recover the costs of the suit which includes a reasonable attorney's fee. A recovery for the costs of the suit is not dependent upon the issuance of an injunction or the recovery of actual damages. *Tallmadge v. Aurora Chrysler Plymouth, Inc., supra* at 93–94.

RCW 19.86.090 also allows the trial court, in its discretion, to treble the award of damages to an amount up to $1,000. Lad did not prove that it suffered any monetary damages of a particular sum. In the absence of such a finding, the trial court's award of $1,000 for trebled damages is error. However, the failure to show actual monetary damages only precludes the recovery of treble damages. It does not act as a complete bar to a recovery under the act. Lad was properly awarded its costs of the suit which included the $5,000 attorney's fee award and $196.25 in costs.

The judgment of the Superior Court is affirmed in all respects with the exception of the $1,000 award for treble damages. The matter is remanded to that court for entry of judgment consistent with this opinion.

GREEN, J., concurs.

ROE, C.J. (concurring in part, dissenting in part)—A further elaboration of the facts is necessary to explain my partial dissent. I believe it is an oversimplification by the majority to state the question is whether actual monetary damages are a prerequisite to an award of attorney's fees

under the Consumer Protection Act. RCW 19.86.

This case involves plaintiff insurer St. Paul's suit for 1 year's premium alleged to be due on a policy of insurance from November 1, 1977, to November 1, 1978. For reasons which will appear, the policy was not issued until March 7, 1978, though it was effective as of the previous November.

As stated in the majority, the previous policy was for 3 years. Premiums were to be paid on a composite rate basis, which was based on the insured's sales. The insured had a duty to report its monthly sales, which it did not. Thus, it was difficult for St. Paul to determine the rate. A dispute arose whether the correct rate for the previous year was to be at .317, as provided in the policy, or .370, as claimed by St. Paul. The insurance company sent its billing in excess of the previous year's. The insured did not agree with it but, as the trial court stated in its memorandum opinion, they ultimately settled on an amount which was a composite rate of .370.

In 1977 a new term began, and a binder was issued by the carrier. Again, there was difficulty in getting monthly reports upon which to base a composite rate factor, and St. Paul projected a figure subject to audit. Having received no payment by 1978, St. Paul sued for $30,834, which would be based on a factor of 1.035. The trial court made two significant findings, relying on *Continental Ins. Co. v. Paccar, Inc.*, 26 Wn. App. 850, 614 P.2d 675 (1980), *rev'd in part*, 96 Wn.2d 160, 634 P.2d 291 (1981), which held that premiums could be increased only on the anniversary date of the policy. Thus, the increases for the previous years by St. Paul from .317 to .370 were in fact improper and were an overcharge. The court did not grant judgment in defendant's favor because of the overcharge, finding that the parties had settled. Following the same principle, the court held that St. Paul could not recover on the basis of a factor of 1.035 but was bound by the terms of the previous policy of .370, because the new 1977 policy did not have a premium rate stated. Since the defendants were delinquent in their premiums, even at the lower rate, judgment was

entered against them in favor of the plaintiff for $11,022.80, a little less than 36 percent of the $30,834 prayed for in the complaint. There was a judgment offset of a premium deposit of $3,592, leaving $7,430.80, which defendants owed plaintiff.

The court then found that as a result of the overcharge, the defendants were damaged by the actual premium due and were required to bring a counterclaim in order to establish the overcharge; that they were entitled to a recovery of the amount overcharged to offset the claims of the plaintiff. Although that was a finding, actually it was not followed because that would have given the defendants a recovery of some $19,811.20. Instead, the trial court found violation of the Consumer Protection Act and awarded damages of $1,000 plus $5,000 attorney's fees and costs.

The plaintiff sued to recover its premium. It did not recover the amount sued for. This is true of probably the majority of plaintiffs' cases, but I do not see why that subjects them to the Consumer Protection Act, which would chill many meritorious plaintiffs' claims. Actually, I fail to see how defendants suffered any damages or were required to bring a counterclaim. They could merely deny the claim of the plaintiff, which the plaintiff would have to prove. They had not paid the premium and refused to do so; the plaintiff had no alternative but to resort to court action. Defendants answered plaintiff's interrogatory 18 regarding the amount owed: "Nothing is owed", and in answer to interrogatory 17[5] that the plaintiff simply applied the wrong rates. Defendants further allege that rather than being indebted to the plaintiff, the plaintiff was indebted to them because of overcharges presently unknown. The trial court held against the defendants in those three matters.

The Consumer Protection Act, RCW 19.86.090, states that "Any person *who is injured* in his business or property

---

[5] "17. Is it your position that any late billing or request for payment from Plaintiff in any way reduced the amount owed, and if so, please state in what manner this reduced the amount owed and the authority upon which you rely."

by a violation of RCW 19.86.020 . . . may bring a civil action in the superior court to enjoin further violations, to recover the *actual damages sustained by him . . .*" (Italics mine.) No injunction was sought and none was granted.

As stated in *Dempsey v. Joe Pignataro Chevrolet, Inc.,* 22 Wn. App. 384, 393, 589 P.2d 1265 (1979), to recover for a per se violation of the Consumer Protection Act, a party must prove:

> (1) the existence of a pertinent statute; (2) its violation; (3) that such violation was the proximate cause of damages sustained; and (4) that they were within the class of people the statute sought to protect.

It is odd that since the plaintiff won and defendants were ordered to pay the money they owed, that merely because of a successful reduction in the amount claimed and prior problems over rates which were settled, the court finds they have suffered damages. This case is unlike *Salois v. Mutual of Omaha Ins. Co.,* 90 Wn.2d 355, 581 P.2d 1349 (1978), where the insurance company refused to pay its claim. Here, the plaintiff paid claims even when the premiums had not been paid on the policy as provided by the terms. St. Paul did not deny the defendants insurance coverage as did the insurance company in *Salois.*

The majority relies on *Tallmadge v. Aurora Chrysler Plymouth, Inc.,* 25 Wn. App. 90, 605 P.2d 1275 (1979). There, the defendant sold plaintiff a used automobile though it was advertised as brand new. The plaintiff was found to have suffered damages for the purpose of the Consumer Protection Act in that he was inconvenienced, deprived of the use and enjoyment of the property and received an automobile with defects, needing repair. I cannot escape the elements of a per se violation as found in *Wilkinson v. Smith,* 31 Wn. App. 1, 9, 639 P.2d 768 (1982), which repeats the requirements of *Dempsey* that to recover on a per se violation of a statute in a consumer protection case, one of the elements is that such violation, if there was one, was a proximate cause of damages sustained.

St. Paul strenuously argued that the contract was subject

to negotiations for a new rate to be done by endorsement. It presented evidence which, if believed, would have shown there was a new rate and that the policy was modified. Unfortunately a Mr. Coyle, the plaintiff's agent, was unhealthy and unable to testify. In its memorandum opinion, the court stated as to Mr. Coyle's absence:

[T]hat's unfortunate because he had very crucial information that might make a decision in this case a lot easier, be that as it may, the fact of the matter is the parties didn't renegotiate a new premium. They fell into a dispute, just as in the PACCAR case and legally the insurance was extending their [sic] coverage at the previous rate until a new rate was determined.

I believe this merely reflected an honest difference of opinion and a failure of proof. The effect of the trial court's decision, affirmed by the majority, is that because of failure of proof, the plaintiff and the defendants, even though they had settled the previous dispute over the amount of the premium, such dispute may be used as a pogo stick to justify application of the Consumer Protection Act in litigation involving only a subsequent 1–year suit for premium, which suit was successful. The application of the $1,000 damages and $5,000 attorney's fees left the plaintiff with a judgment of approximately $1,234.55.

The great danger in the majority's position is that a trial court may look to some previous dealings between the parties, which were settled without a judgment, and use them as a basis to deprive a meritorious party of the fruits of the litigation. Admittedly, the defendant owed at least $7,430.80 in premiums. The record is bare of any evidence that the overcharge from .317 to .370, which the court found occurred in the previous years, equaled any specific sum of money. The court simply trebled an unknown figure or a nonfigure and reached $1,000, and then added attorney's fees, and subtracted that amount from the plaintiff's judgment.

Accordingly, I would affirm the trial court as to the

award to the plaintiff, but reverse as to the violation of the Consumer Protection Act.

Reconsideration denied February 23, 1983.