[No. 4411-4-III.   Division Three.   March 29, 1983.]

VICTOR H. SIMONSON, ET AL, *Respondents*, v.
LARRY G. FENDELL, ET AL, *Appellants*.

*Ronald F. Whitaker* and *Walters, Whitaker, Finney & Falk,* for appellants.

*Richard R. Greiner, John Gavin,* and *Gavin, Robinson, Kendrick, Redman & Mays,* for respondents.

McINTURFF, J.—Larry Fendell appeals the denial of his claim for rescission and the entry of judgment against him. We affirm.

In January 1978, Northwest Furnace & Equipment Co. (Northwest) was formed. Victor Simonson, a former truck driver, provided the funding and was issued 50 percent of the corporate stock. Dennis Teeter, having prior knowledge of the furnace supply business, was issued the remaining 50 percent. However, these shares were pledged to Mr. Simonson as security. Mr. Teeter was the president and Mr. Simonson was the vice–president of Northwest. Mr. Teeter was to teach Mr. Simonson the business aspects of the operation. Their goal was that Mr. Simonson would eventually become the warehouse manager.

Shortly after commencing operations, it became apparent

Mr. Simonson was not learning the business. In May 1978, Larry Fendell was hired as general manager. Mr. Fendell had previously worked with Mr. Teeter and was familiar with the operation of the furnace supply business.

Mr. Simonson became increasingly disenchanted with Northwest and announced he wanted out of the business. Mr. Teeter and Mr. Fendell were interested in jointly purchasing Mr. Simonson's interest. Mr. Simonson told them he only wanted the return of the money he had put into the business. Mr. Fendell insisted the company accountant prepare financial statements. An August 31, 1978 financial statement showed Northwest was operating at a profit. A September 30, 1978 statement showed the company had an earned surplus of more than $19,000 and a book value exceeding $37,000. Mr. Teeter and Mr. Fendell relied upon these financial statements in making their subsequent decision to purchase the business.

On October 19, 1978, the parties entered into an agreement whereby Mr. Teeter and Mr. Fendell would purchase Mr. Simonson's interest for $75,000. The contract called for full performance by December 30, 1978. Mr. Teeter and Mr. Fendell were unable to obtain financing by that date. In January 1979 the parties met to discuss a request for an extension. At that time, it was discovered that $48,000 in accounts payable for goods purchased in August 1978 had been inadvertently omitted from the September 30, 1978 financial statement.

Mr. Simonson commenced an action seeking liquidation of the corporation and enforcement of the agreement. Mr. Teeter and Mr. Fendell resisted the liquidation and claimed the agreement was rescinded due to a mutual mistake of fact. In the meantime, Mr. Teeter has filed bankruptcy and is not under the jurisdiction of this court.

The trial was bifurcated. The trial court found there had not been a mutual mistake of fact and denied the claim for rescission. Mr. Simonson was granted a judgment against Mr. Fendell for an amount to be determined at a later hearing.

■ First, Mr. Fendell contends finding of fact 6 is not supported by substantial evidence.[1] The challenged portion of this finding states Mr. Teeter and Mr. Fendell were in control of the raw data upon which the September 30, 1978 financial statement was based. Mr. Fendell candidly admits this finding does not form the basis for any conclusion of law. Regardless of its importance, we have searched the record and hold that finding of fact 6 is supported by substantial evidence and the reasonable inferences therefrom.

■ Next, Mr. Fendell contends the trial court erred in not rescinding the contract based on a mutual mistake of fact. A party seeking to rescind an agreement on the basis of a mutual mistake of fact must show by clear, cogent, and convincing evidence that the mistake was independently made by both parties. *Pepper v. Evanson*, 70 Wn.2d 309, 313–14, 422 P.2d 817 (1967); *Carson v. Isabel Apartments, Inc.*, 20 Wn. App. 293, 296, 579 P.2d 1027 (1978); *Vermette v. Andersen*, 16 Wn. App. 466, 469, 558 P.2d 258 (1976); *Super Valu Stores, Inc. v. Loveless*, 5 Wn. App. 551, 554, 489 P.2d 368 (1971).

The trial court heard differing testimony as to the effect of the $48,000 omission. Mr. Teeter and Mr. Fendell stated they would not have signed the agreement had they known the true status of the accounts payable. Mr. Simonson stated he was uninterested in the company's profitability and only wanted to get out of the business what he had in it. However, he also stated he probably would not have

---

[1]Finding of fact 6 states:

"Plaintiffs contributed to the gathering of some of the data during the negotiations only at the insistence of the defendants. Defendants were in control of the raw data or potential facts upon which the financial statements were based, which facts were found to be in error in that the accounts payable figure in the September 30, 1978 statement was understated in an amount in excess of $48,000. Plaintiffs did not base their asking price on the facts upon which the financial statements were based, nor did any communication of the condition of the company to plaintiffs change or alter plaintiffs' position as to their price. The defendants did not rely upon any representations of plaintiffs and made their own decision to purchase based substantially upon the financial statements and upon their unilateral diagnosis of the potential profitability of the business."

signed the agreement had he been aware of the omission. The trial court, faced with conflicting evidence, found Mr. Teeter and Mr. Fendell made their decision to purchase substantially upon their unilateral diagnosis of the business and not upon any representations made by Mr. Simonson. The trial court also found Mr. Simonson's selling price was determined by his prior investment in the company and not upon an assessment of the company's profitability. After hearing all the evidence, the trial court determined there had only been a unilateral mistake of fact. Upon these findings, supported by substantial evidence, there was no error in not granting the rescission.

Finally, Mr. Fendell contends the $48,000 omission should have been the basis for rescission based on an innocent misrepresentation. A material innocent misrepresentation may serve as a basis for a rescission claim. *Anthony v. Warren,* 28 Wn.2d 773, 786, 184 P.2d 105, 190 P.2d 88 (1947); *Kruger v. Redi–Brew Corp.,* 9 Wn. App. 322, 327, 511 P.2d 1405 (1973). However, the innocent misrepresentation must constitute a mutual mistake of fact and the other party must have relied on it. *Enrico v. Overson,* 19 Wn. App. 483, 487, 576 P.2d 75 (1978).

The trial court found, supported by substantial evidence, that Mr. Fendell did not rely on any representations of Mr. Simonson and that Mr. Fendell made his decision to purchase the business based on his unilateral diagnosis of its profitability. There was no error in the trial court not granting a rescission based on an innocent misrepresentation.

Mr. Simonson has requested attorney's fees on appeal. However, counsel for Mr. Simonson has not fully complied with RAP 18.1 which provides in part:

> **(a) Generally.** If applicable law grants to a party the right to recover reasonable attorney's fees or expenses on review, the party should request the fees or expenses as provided in this rule.
>
> **(b) Argument in Brief.** The party should devote a section of the brief to the request for the fee or expenses.

The request should not be made in the cost bill.

(c) **Affidavit.** Seven days prior to oral argument, the party should serve and file an affidavit in the appellate court detailing the expenses incurred and the services performed by counsel.

(d) **Oral Argument.** A party should include in oral argument a request for the fee or expenses and a reference to the affidavit on file.

Generally, compliance with RAP 18.1 serves to provide this court and opposing counsel with notice attorney's fees are being sought. RAP 18.1(a) provides that if a party is entitled to recover attorney's fees, he should request them in accordance with this rule. Attorney's fees are recoverable when there is a contractual, statutory, or recognized equitable basis for such an award. *Hsu Ying Li v. Tang,* 87 Wn.2d 796, 796–98, 557 P.2d 342 (1976). Here, the contract provided:

12. In the event there shall be any litigation involving this agreement, the parties agree that the successful party in such litigation shall be entitled to a reasonable attorney's fee in addition to the usual and statutory costs.

Thus, Mr. Simonson is entitled under the contract to recover his reasonable attorney's fees on review. This is a valuable right at a time when attorney's fees range from $50 to $150 or more per hour. *See St. Paul Fire & Marine Ins. Co. v. Updegrave,* 33 Wn. App. 653, 659, 656 P.2d 1130 (1983).

RAP 18.1(b) provides that a party should devote a section of his brief to his attorney's fees request. Compliance with this section places this court and opposing counsel on notice that attorney's fees are being sought and allows opposing counsel to address in his respondent's or reply brief the merits of whether attorney's fees are recoverable. Compliance also allows the attorney's fees issue to be included in this court's preargument workup. In the present case, counsel for Mr. Simonson did not devote a section of his brief to the attorney's fees issue.

RAP 18.1(c) provides that a party, 7 days prior to oral

argument, should serve and file an affidavit which details the expenses incurred and the services performed. Compliance with this section provides notice of how many hours were required and how much money is being sought. Timely service and filing of the affidavit also performs a notice function and permits opposing counsel to contravene the affidavit. *See Lindsay Credit Corp. v. Skarperud,* 33 Wn. App. 766, 773, 657 P.2d 804 (1983). Mr. Simonson's counsel complied with this section. The record indicates a copy of the affidavit was served on opposing counsel prior to oral argument. Mr. Fendell was given notice attorney's fees were being sought.

RAP 18.1(d) provides that a party should raise the issue of attorney's fees during oral argument and refer to the filed affidavit. Compliance gives opposing counsel an additional opportunity to challenge the reasonableness of the request. Mr. Simonson did not discuss the attorney's fees issue during oral argument. Mr. Fendell, having received a copy of the affidavit, has not posed any objection to the propriety or amount of the request.

A party who fails to comply with the Rules of Appellate Procedure is subject to the imposition of sanctions. RAP 1.2(b); RAP 18.9(a). What is the proper sanction, if any, for noncompliance with RAP 18.1? In some cases, the court has denied attorney's fees. *See Topline Equip., Inc. v. Stan Witty Land, Inc.,* 31 Wn. App. 86, 97, 639 P.2d 825 (1982); *Sollenberger v. Cranwell,* 26 Wn. App. 783, 788, 614 P.2d 234 (1980). The client possesses the right to recover attorney's fees. Considering the probable magnitude of attorney's fees, this is a substantial right. The primary consequence of denying attorney's fees because an attorney did not fully comply with RAP 18.1 is to place the monetary loss upon the client, not the attorney. If attorney's fees are denied because his attorney failed to fully comply with RAP 18.1, it is the client who must pay his attorney instead of the fees being rightfully paid by the opposing party. Bearing in mind the rules on appeal are to

be liberally construed to promote justice, RAP 1.2(a),[2] it is inappropriate that the intent of RAP 18.1 be to deny a client his right to reasonable attorney's fees due to his attorney's failure to fully comply with the procedural rules.

It must also be noted that the commands of RAP 18.1 are denoted by the word "should". RAP 1.2(b) provides in part:

> "Should" is used when referring to an act a party or counsel for a party is under an obligation to perform. The court will ordinarily impose sanctions if the act is not done within the time or in the manner specified. The word "must" is used in place of "should" if extending the time within which the act must be done is subject to the severe test under Rule 18.8(b) or to emphasize failure to perform the act in a timely way may result in more severe than usual sanctions.

Under the Rules of Appellate Procedure, the total denial of attorney's fees for noncompliance may be construed as a necessary sanction if the rule stated a party "must" comply with RAP 18.1. But, the use of the word "should" suggests a lesser sanction is reasonable. To emasculate a party's right to recover reasonable attorney's fees because his attorney "should" have fully complied with the rules is too harsh and is repugnant to the liberal interpretation mandate of RAP 1.2(a). To hold otherwise would place our practice and procedure philosophy back to a place in time prior to the existence of RAP 1.2(a).[3]

We can look to our Supreme Court for guidance in resolving this problem. In *Marketing Unlimited, Inc. v.*

---

[2]RAP 1.2(a) provides:

"These rules will be liberally interpreted to promote justice and facilitate the decision of cases on the merits. Cases and issues will not be determined on the basis of compliance or noncompliance with these rules except in compelling circumstances where justice demands, subject to the restrictions in Rule 18.8(b)."

[3]We are mindful of a quote by our Supreme Court in *Curtis Lumber Co. v. Sortor,* 83 Wn.2d 764, 767, 522 P.2d 822 (1974): "the basic purpose of the new rules of civil procedure is to eliminate or at least to minimize technical miscarriages of justice inherent in archaic procedural concepts once characterized by Vanderbilt as 'the sporting theory of justice.'"

*Jefferson Chem. Co.,* 90 Wn.2d 410, 414, 583 P.2d 630 (1978), the prevailing party did not comply with RAP 18.1. There, the court granted the request for attorney's fees on the condition the respondent supply a supporting affidavit within 15 days of the filing of the opinion. We agree.

We hold the proper sanction to be imposed for an attorney's noncompliance with RAP 18.1 is the imposition of monetary sanctions to be paid from the attorney's account. This sanction serves two purposes. First, it protects the client's right to recover his reasonable attorney's fees. The client is not being penalized for his counsel's oversight or lack of familiarity with appellate practice. Second, it places the financial burden for noncompliance on the attorney.

Noncompliance with the rules forces this court to unnecessarily expend its limited resources to insure all parties have been provided notice. This oftentimes necessitates the withdrawal and revision of opinions. Our present holding "must" be viewed by the bar as a warning that RAP 18.1 is a rule to be followed. If it is not, the attorney, rather than the client, will be held accountable.

Mr. Simonson is granted attorney's fees of $4,582.50. As a sanction for his noncompliance with RAP 18.1(b) and (d), counsel for Mr. Simonson shall pay to the clerk of this court $250.

The judgment of the Superior Court is affirmed.

MUNSON, J., concurs.

ROE, C.J. (concurring in part, dissenting in part)—I concur except as to the award of attorney's fees. There is not one word in respondents' brief as to attorney's fees as required by RAP 18.1(b).

The method of the majority in permitting an award is totally contrary to the rule, unsupported by any authority, and a highly irregular step which tends to impeach the entire concept of appellate practice. The parties should have fair notice of the relief requested with an opportunity to respond, which has been denied the appellants, who

must be shocked by this procedure. The majority is not in harmony with RAP 10.3 which requires the brief to contain the assignments of error and argument, and the court will only review a claimed error which is included in the assignment of error or clearly disclosed. The majority position is inconsistent in principle with *Thomas v. French,* 99 Wn.2d 95, 659 P.2d 1097 (1983), which refused to consider alleged error in an instruction because such was not quoted in the brief as required by RAP 10.4(c).

The majority relies on *Marketing Unlimited, Inc. v. Jefferson Chem. Co.,* 90 Wn.2d 410, 583 P.2d 630 (1978) to justify the award. The reliance is misplaced since in that case, unlike the present one, there was a failure to file the affidavit detailing the expenses as required by RAP 18.1(c). The fault in the instant case is the failure to claim attorney's fees in the brief. No case has been cited which permits that to be remedied after argument, although discretion is allowed to permit the late filing of the supporting affidavit.

It is interesting to observe the prevailing respondents found refuge in the rule that matters not raised in the trial court will not be considered on appeal, but now seek to ignore a rule which would deny them this added relief.

Reconsideration denied May 28, 1983.

Review granted by Supreme Court August 12, 1983.